# EXHIBIT A

# JOHN REZNIKOFF
# QUESTIONED DOCUMENTS



A-63

January 11, 2016

To Whom It May Concern:

I have been asked to opine on the purported signatures and initials of John T. Eastman that exist on the following 4 documents (Questioned). The initials and signatures on the 4 questioned documents were compared with signatures and initials, submitted as being known, of John T. Eastman. My findings are included in this report.

Respectfully submitted,

John Reznikoff

# John T. Eastman initials and signature review

## I. Four Questioned Documents

Summbitted for review are photocopies of the following documents
Q(uestioned)1 "ADVISEMENT OF RIGHTS"
Q(uestioned)2 "Waterbury Police Department Consent to Search Form"
Q(uestioned)3 "Waterbury Police Department Voluntary Statement Rights Form"
Q(uestioned)4 a&b "Waterbury Police Department Voluntary Statement"

The documents are marked at the bottom of each page: Q1,Q2,Q3,Q4 a&b


## II. Fourteen Known Documents

Submitted for review are photocopies and originals submitted as being known signatures or initials of John T. Eastman on the following documents:

K(nown)1 "Printed by Debie John-Radcliffe…"
K(nown)2 "Federal Defender"
K(nown)3 "Authorization Form for Release of Medical Information"
K(nown)4 "Authorization For Release Of Information"
K(nown)5 "Authorization To Release and/or Exchange Information"
K(nown)6 "Authorization to Disclose Health Information"
K(nown)7 a&b "Authorization to Disclose Health Information"
K(nown)8 a&b "Authorization to Release/Disclose Protected Health Information"
K(nown)9 "Received Jun 12 2015 Office of the Federal Defender Hartford, Connecticut"
K(nown)10 "Authorization for the Release of Information From the Department of Children and Families"
K(nown)11 "Authorization for Release of Non-Health Information"
K(nown)12 "Social Security Card"
K(nown)13  "Sears Receipt"
K(nown)14 "Change of Address card" (DMV)

The documents are marked at the bottom of each page:
K1,K2,K3,K4,K5,K6,K7 a&b,K8 a&b,K9,K10,K11,K12,K13,K14

## III. Findings

Of the fourteen documents submitted as containing known signatures and or initials that I examined for this report, thirteen are original and not photocopies. It is also important to note that of the fourteen documents presented for review, four predate Mr. Eastman's arrest in this pending case are therefore examples that represent his signature unrelated to or influenced by the threat of litigation. These four submitted known signatures are K1,K12,K13,K14. Additionally the aforementioned four signatures that predate Mr. Eastman's arrest are entirely consistent with those that postdate his arrest.  Photocopies provide a sub-par example of handwriting. In addition, lost for examination are pen speed, pressure, rhythm, as well as a number of other factors.

The questioned and known documents appear after the text of this report along with an exhibit that displays all questioned and known signatures and initials

**In spite of these limitations, in reviewing these documents, it is my opinion that the questioned signatures and initials on documents Q1-Q4, do not share authorship with the submitted known signatures and initials of John T. Eastman on documents K1-K14, to a strong degree of professional certainty.**

The reasons that I have reached this conclusion include but are not limited to the letter formation, line acclimation, neatness and legibility, size of letters, apparent pressure and overall appearance. All documents referred to in this report are reproduced and included in the following pages.

Respectfully submitted,

John Reznikoff

4

# John Reznikoff
## Expert Witness – Questioned Documents and Handwriting

███████████████████████████████

**Expert Witness/Career Highlights**

- Expert for the United States Department of Justice in one of the largest civil actions ever filed against the Government, in which the Nixon family sought $210 million in compensation for the taking of his papers. Consulted on authenticity and value, 1998-1999. In a report used in testimony, appraised the archive at $1.5 million, which approximated the June, 2000 settlement of $18 million (accounting for 25 years of compounded interest). Instrumental in saving U.S. Taxpayers $190 million.
- Expert witness on behalf of George Pickett V, involving a dispute concerning the papers and artifacts of Gen. George Pickett of "Pickett's Charge" fame. Testified on authenticity and value. Our client won a verdict approaching seven figures, which matched our appraisal, 1999.
- Aided the New York Grand Jury in securing an indictment and conviction of the perpetrator of a major manuscript fraud in 1998.
- Expert witness for numerous civil and criminal cases, including the Bartlett Tree Company embezzlement case.
- Expert witness for the defense of Historical Documents, Inc. regarding the famous John Paul Getty diaries. Helped in setting the archives value at approximately $2 million. Report was instrumental in causing the Getty family to settle before trial in 1996.
- Worked undercover in a sting operation with postal inspectors to apprehend a postal felon in 1985.
- 2014 – Testified in Federal Court as appraiser and relic and manuscript authenticator. Largely responsible for nearly $7,000,000 verdict against the Country of Venezuela
- 2010 - 2011 - Multiple questioned document cases including testimony and deposition. In one case, testimony in court led to arrest of defendant for forgery.
- 2007-2008 Hired by private individual in handwriting case involving Earthlink with $300,000,000 at dispute
- 2006-Present Hired by State Government as handwriting expert in 3 murder cases, one of them a Death Penalty case.
- Plaintiff's expert witness in Joey Giardello vs. Universal Pictures et al. Evaluated harm caused Giardello by misrepresentation in the hit movie "The Hurricane". Report was instrumental in achieving a major financial settlement.
- Expert witness for Collectors Universe in $10 Million lawsuit.
- 2011 - Authenticated and sold most important Supreme Court item: Justice John McLean's draft for dissenting opinion in Dred Scott case
- Consulted by CNN, ESPN, The Boston Herald, and The St. Petersburg Times, regarding the authenticity of the Ted Williams bio-stasis preservation document. - 2002
- Authenticator and consultant for MastroNet, Inc., a conglomerate of memorabilia auctioneers with an excess of $30 million in annual sales, 2001 - 2008.
- Engaged by The Albert Schweitzer Institute for Humanities to value and market their huge archive of materials to be de-accessioned. Marketed and arranged a sale that grossed a six-figure payment from another institution in 2001.
- Agent and spokesperson for Peggy Davis, owner of moon rock valued at $1 million. Successfully challenged NASA, who seized the artifact, and helped secure its return, 2000.
- Appraised the Johnson family papers, a historically important archive containing multiple letters of Abigail and John Adams, for IRS donation purposes.

- Authenticated and appraised the Hemingway Papers of A.E. Hotchner.
- Authenticated and appraised Hemingway's first book, signed and inscribed to his first wife, on behalf of Jack Hemingway and the Library of Congress.
- Appraised the Charles A. Lindbergh checks which purchased the "Spirit of St. Louis".
- Purchased the largest Presidential bill-signing pen collection in private hands, including pens used by Lincoln, FDR, JFK, and LBJ.
- Purchased and marketed the papers of Constitution signer John Langdon, which realized $700,000.00 in sales in 1997-1998.
- Purchased and marketed the papers of Congressman Neal Smith, Robert Bauman, Albert Quie, Sam Devine and several others, 1995-present.
- Have purchased and marketed dozens of collections in the six and seven figure range.
- 2014 – Authenticated and sold the Sang collection of Signers of the Declaration of Independence for more than $1,000,000
- 2012 - Sold the longest known handwritten letter of Thomas Jefferson - 49 pages
- , 2011 - Authenticated and sold important Lincoln archive, priced at $1.6 million.
- 2011 - Authenticated and sold arguably most important Robert E. Lee letter to his brother resigning his U. S. Army commission to take up arms for the Confederacy (Sothebys estimate $400,000 - $600,000)
- 2006-present Expert for the 2nd largest concern of its kind, James Spence Authentication. Only authenticator to opine for both #1 PSA/DNA and # 2 JSA.
- 2006-present Trained with forensic experts on the most advanced document examination machine available the Video Spectral Comparator. Purchased the VSC4plus, not available to the general public, making him the only individual dealer in the trade to employ such a device.
- 2005-present Authenticator and consultant for Bauman Rare Books, Madison Avenue, the largest rare book dealer in the world.
- 2005 Authenticator for the Henry Luhrs collection, a multi-million dollar auction at Heritage Americana, focusing primarily on Abraham Lincoln.
- 2006 First approved authenticator/appraiser for UACC, the largest trade organization in the field. Sole person designated to opine on "Famous figures" at that time, 2006
- Designated authenticator for American and Historical Autographs for the largest and most respected service of its kind, PSA/DNA…the last word in authenticity.
- Authenticator and consultant for R&R Auctions, one of the largest concerns of its kind, 2003-present

## MEDIA

- 2015 – Multiple international media interviews including BBC
- 2014 & 2015 – Featured in two episodes of *Secrets of the Arsenal* on the American Heroes Channel as manuscript and historical expert
- 2014 – Appeared on top investigative show *Inside Edition* as "an expert in historic signatures"
- 2013 – Consulted by CBS News as expert on questioned signatures "Reznikoff…one of the best in the world"
- 2013 - Filmed with National Geographic Channel (NGC) for documentary detailing the Kennedy Assassination
- 2013 - Appeared on Fox TV and ABC TV as "leading document and signature authenticator"
- 2013 - Appeared in *New York Times* Antiques section with photo credit and significant mention concerning the Kennedy Assassination
- 2013 - 2012 - Appeared and featured as an expert on several episodes of VH1's new pop culture show *For What Its Worth*, hosted by Howard Stern sidekick, Gary Dell'Abate (Baba Booey)
- 2013 - 2012 - Provided authenticity opinions for many items on *Pawn Stars*. Assisted recurring book and manuscript expert

6

- 2013 - 2012 - Filmed and appeared in two episodes of *History Detectives* on PBS as document examiner - included subjects were Star Spangled Banner and Valley Forge map
- 2011 - Handwriting and relic expert on Charles Lindbergh for a July 2011 episode of *History Detectives*
- 2011 - Hired by The History Channel as handwriting expert for "Custer's Last Man: I Survived Little Big Horn".
- 2011 - Featured on "This American Life" series on NPR Radio, February 2011
- 2010 - Introduced the first-ever YouTube video series on authenticating signatures of famous people
- 2010 - Made worldwide news by purchasing President Barack Obama's Jeep for inventory.
- 2009 - IADA (International Autograph Dealers Association) Person of the Year, 2009
- 2009 - Universal Autograph Collector's Club Names John Reznikoff "Autograph Dealer of the Year" for 2009!
- 2008 Helped Vanity Fair Magazine disprove the claim of an individual posing as President John F. Kennedy's son.
- 2008 Featured in New York Times article
- 2007 Authenticator and consultant and guest on "History Detectives", a PBS television program.
- 2007 Authenticator and consultant and guest on "History Detectives", a PBS television program.

## Publications

- Contributing editor of Autograph Collector. Authored dozens of articles from 1995-2009.
- Authored complete chapters in The Sanders Price Guide to Autographs, both third, fourth and seventh editions in 1994, 1996 and 2009 on the subject of authentication.
- Authored numerous articles in Manuscripts, Pen and Quill, Linn's, American Philatelist and other trade publications from 1985-present.
- Appeared on Good Morning, America, Extra, Court TV and other television media 1985-present.
- Appeared on hundreds of radio stations worldwide, currently host of What's It Worth? on WICC radio.
- Have appeared in hundreds of publications worldwide including The New York Times, Smithsonian, Millionaire, and Newsweek from 1980-present.
- Have lectured extensively on manuscripts to various groups from 1985-present.
- Have Guinness Book of World's Records entry for related field.

## Associations

- UACC Board of Directors Member, 2012 - present.
- President of the International Autograph Dealers Association, 2001-2002.
- Vice President of the International Autograph Dealers Association, 1998-2000.
- Recipient of the Mary A. Benjamin Outstanding Achievement Award for Establishing the IACC/DA Authenticating Service, 1999
- Conceived and founded the Professional Autographs Dealers Association. Past Vice-President 1993-1997.
- (candidate), New England Association of Appraisers
- Charter member of the Universal Autograph Collectors Club.
- Member, American College of Forensic Examiners.
- One of the select few in the industry to be chosen as a Sotheby's Associate for Internet

A-69

Auctions, 1999-2002.

**Education**

- Fordham University, double major of political science and anthropology, 1978-1981

## ADVISEMENT OF RIGHTS

Q-66882

The Constitution requires that I advise you of your rights:

1. You have the right to remain silent. If you talk to any police officer, anything you say can and will be used against you in court.

2. You have the right to consult with an attorney before you are questioned, and you may have him/her with you during questioning.

3. If you cannot afford a lawyer, one will be appointed for you, if you wish, before any questioning.

4. If you wish to answer questions, you can stop answering at any time.

5. You may stop answering at any time if you wish to talk to an attorney, and you may have him/her with you during any questioning.

6. If you are a juvenile (under age 16), a parent or guardian must be present during any admission, confession or statement (written or oral).

Do you understand these rights? Yes / No

Do you wish to give up these rights and answer my questions? Yes / No

Signature: _____

Date: 11/10/02   Time: 1855 hrs

Officer's Signature: _____   ID# 532

Q1

Waterbury Police Department
Waterbury, Connecticut
Standard Form Number P-20
Revised 04/08

# Waterbury Police Department
## Consent To Search Form

CASE NUMBER: _12-66882_   TYPE OF INCIDENT: _Offense Against Children_

The Waterbury Police Department requests your permission to search/obtain _HP desktop_
_Computer_____
_which is located at: _157 Congress Ave 3rd Floor Wtby, CT_____

    *Under existing circumstances, the law requires that the Waterbury Police Department either make the search on authority of a Search Warrant or, in the absence of a Search Warrant, that the Waterbury Police Department conduct the search with your voluntary consent. The Waterbury Police Department wants to inform you that you have the right to require that no search be conducted without a search warrant, but you may also waive that right, if you so desire, by giving the Waterbury Police Department your permission to conduct the search. In the event that items of evidence are collected, said items may be subject to forensic analysis.*

    *I have read and understood the above disclosure:* _JE_ *(initial of person giving consent)*

    **Do you freely and voluntarily give permission to the Waterbury Police Department to** search/obtain _HP desktop computer_____
which is located at: _157 Congress Ave 3rd Floor Wtby, CT_____ ?

☒ Yes ☐ No _JE_ **(initial of person)**

Have any promises been made to you, or have you been pressured or coerced to consent to this search?

☐ Yes ☒ No _JE_ **(initial of person)**

Signature of Person Giving Consent: _John Eastman_____

Printed Name of Person Giving Consent: _John P. Eastman_____

DATE: _11/10/12_ TIME: _7:40 pm_ LOCATION: _255 E Main St Wtby_

WITNESSES OR OFFICERS: _Det. F. Mazza #200_ PARENT/LEGAL GUARDIAN: _____

_____        _____

Q2

Waterbury Police Department
Waterbury, Connecticut
Standard Form Number P-07
Revised 10/20/08

# Waterbury Police Department
## Voluntary Statement Rights Form

Case Number: <u>2012-066882</u>

The Constitution requires that I inform you of your rights:

You have the right to remain silent. If you talk to any police officer, anything you say can and will be used against you in court. (　)

You have a right to consult with a lawyer before you are questioned, and may have him/her with you during questioning. (　)

If you can not afford a lawyer, one will be appointed for you, if you wish, before any questioning. (　)

If you wish to answer questions, you have the right to stop answering at any time. (　)

You may stop answering at any time if you wish to talk to a lawyer, and may have him/her with you during any further questioning. (　)

If you are a juvenile (under 16), a parent or guardian must be present during any admission, confession, or statement, written or oral. (　)

### WAIVER

Do you understand these rights?  Yes (　)  No (　)
Are you willing to waive (give up) these rights and answer my questions?  Yes (　)  No (　)

_____   _____   _____   _____
Officer Signature & ID Number           Signature                      Date             Time

La Constitucion de los Estados Unidos requiere que se le informe de sus derechos:

Tiene derecho de permanecer en silencio. Si le habla a cualquier oficial de la policia, cualquier cosa que le diga puede ser usado en corte en su contra. (　)

Tiene derecho de consultar con un abogado antes de ser interrogado y a que el abogado este presente durante el interrogatorio. (　)

Si no tiene dinero para pagar un abogado, la corte le proveera uno, si asi lo desca, antes de cualquir interrogatorio. (　)

Si desea contestar preguntas, tiene derecho de dejar de contestar las preguntas en cualquier momento.(　)

Si desea hablar con un abogado, puede dejar de contestar a las preguntas en cualquier momento, y el abogado puede permanecer con usted durante el resto del interogatorio. (　)

Si usted es un menor, (menor de 16 anos) uno de sus padres o un guardian tiene que estar presente durante alguna admision, confesion, o declaracion, escrita o oral, que usted haga. (　)

### RENUNCIA DE DERECHOS

Entiende estos derechos?  Si (　)  No (　)
Esta dispuesto a renunciar estos derechos y contestar mis preguntas?  Si (　)  No (　)

_____   _____   _____   _____
Officer Signature & ID Number           Signatura                      Fecha          Hora del Dia

Q3

Waterbury Police Department
Waterbury, Connecticut
Standard Form Number P-06
Revised 09/06

## Waterbury Police Department
## Voluntary Statement

Start Date: **11/10/2012** Time: **07:34 PM**                    CASE No.# : **2012-066882**

PLACE STATEMENT TAKEN: 255 East Main St. Waterbury, CT

I, the undersigned, **John  Eastman** of **157 Congress Ave. 3rd floor  Waterbury, CT**, Tel.# ████ ████ being **45** years of age, born in **New Haven, CT** on ████ do hereby make the following statement to **Peter Morgan**, having first been identified as  **a Waterbury Police Detective**.

I, John Eastman of 157 Congress Ave. 3rd floor D.O.B. ████ am giving this statement under my own free will. I can read and write English, and have completed ten years of schooling and have a GED. Det. Morgan has advised me of my Constitutional Rights and I signed and initialed a card and form agreeing to waive those Rights and speak to him and to give this statement. I have not been threatened to give this statement, nor have I been promised anything in return for it. I know the contents of this statement can be used in court.

I live with my mother at our apartment and have my own bedroom in the apartment. I have an HP desktop computer in my bedroom that I use to go onto the Internet. I have had this computer for about 5 months, and it has been in my bedroom the entire time. I also have a web cam hooked up to the computer that I use to chat with people on the Internet. I had a laptop computer before that, but it stopped working and I threw it out and bought the one I have now.

I use the Internet to chat with girls on different web sites. I use the program Skype to chat with girls because you can use the web cam to video chat and see them while chatting. I am sexually  attracted to very petite girls. I like girls that are like 14 years old and have started to develop. Because of this, I made a couple of screen names on Skype that were the names of members of the singing group One Direction. I used their names because I know the names would attract teenage girls to contact me. One of the screen names I used is "harry.styles888". I also have an email address "stylesharry446@gmail.com". I log on to Skype with the screen name and just wait for girls to contact me. When a girl contacts me, I start chatting with them. If they want to see me on the web cam, I will have a You Tube video of the singer from some old video footage ready to play and then point my web cam at the computer screen so the girl thinks that she is talking to the real singer. I will then try talking to the girl in a sexual manner to see if she will talk back. I will ask if the girl will pose in the sexual position doggy style with their ass facing the camera. I ask them to do this because I think it is the best pose to see a girl. My hope is that the girl will show me herself on camera and then pose in a sexual manner, or perform some kind of sex act for me to see. I know that I have chatted with some girls that were between like 12 and 15 years old, we chatted about sex and they posed in a sexual

---

The facts herein contained are true and correct, and knowing that any false statement is subject to prosecution under the penalties of Connecticut State Statute 53a-157b, I have given the above statement of my own free will without threat or promise.

Signed _____
Signature of Person giving voluntary statement

Witness: Det _____ #570

Supervisor _____    11-10-12
Subscribed and Sworn to before me        Date

Finished Date: **11102012** Time: **08:43 PM**

COPY                        Page 1 of 2

Q4a

Waterbury Police Department
Waterbury, Connecticut
Standard Form Number P-06
Revised 09/06

# Waterbury Police Department
## Voluntary Statement

Start Date: 11/10/2012 Time: 07:34 PM

CASE No.# : 2012-066882

manner or performed a sex act so I could watch on the web cam. Anytime that I can get the girls to perform any sex acts, I will masturbate until I ejaculate.

While we were discussing the investigation, Det. Morgan informed me about a couple of girls from Vermont that had complained to their parents about me asking them to pose doggy style on Skype. I do not remember these girls because I talk to so many girls and these girls did not pose for me.

I also go to other porn sites called Motherless.com and Jailbait.

Today, detectives came to my house and told me about an investigation into what I had been doing on Skype with young girls. I wanted to fully cooperate, so I agreed to go to the Detective Bureau to speak about it and give this statement. I also signed a Consent to Search form allowing Det. Morgan to take the desktop computer from my bedroom and do a forensic examination on it to look for the information from my Skype chats.

This statement is the truth.

The facts herein contained are true and correct, and knowing that any false statement is subject to prosecution under the penalties of Connecticut State Statute 53a-157b, I have given the above statement of my own free will without threat or promise.

Signed _____
Signature of Person giving voluntary statement

Witness: Det _____ #570   Supervisor LT. _____   11-10-12
Subscribed and Sworn to before me            Date

Finished Date: 11102012 Time: 08:43 PM

COPY

Page 2 of 2

Q4b

Printed by: Debie Johnson-Radcliffe, 4/30/2015 11:24:22 AM

Birth Date:
Unit No.
Visit No.

8. I understand that Yale-New Haven is a teaching hospital. Doctors or other health practitioners who are members of the care team who are in training may help my doctor with the procedure. These trainees are supervised by qualified staff and the supervisor will be present at all important times during the procedure. I also understand that my doctor's associate(s), surgical assistants and/or other non-physicians or trainees may assist or perform parts of the procedure under my doctor's supervision, as permitted by law and hospital policy. If others who are not hospital staff will be present in the operating room, my doctor has spoken with me about this.

9. I understand the purpose and potential benefits of the procedure. My doctor has explained to me what results to expect, and the chances of getting those results. I understand that no promises or guarantees have been made or can be made about the results of the procedure(s).

10. I give permission to the hospital and the above-named doctor to photograph and/or videotape the procedure(s) for medical, scientific, or educational purposes. I understand that I will not be identified to those not involved in my care unless a separate consent is signed.

11. In the event a healthcare worker is exposed to my blood or body fluids in connection with my procedure, I agree to the collection and testing of my blood for HIV.

Consent signed on __3/11__ , 20 __12__ at _____ AM / PM

X _____     X __John Eastman__  __3/16/12__  _____ AM/PM
Signature of Patient, Guardian or Conservator     Printed Name           Date        Time
(Circle one)

_____     __Joseph Montes PAC__  __3/16/2012__ _____ AM/PM
Signature of Person Obtaining Consent     Printed Name           Date        Time

_____     __M Bianchi__  __3/29/12__  _____ AM/PM
Signature of Operator (If other than above)     Printed Name           Date        Time

Patient is unable to consent for him/herself because (check one):
___ patient too severely ill   ___ patient unconscious   ___ patient not competent

_____ before consent for the patient

_____
Signature of Person Consenting for Patient

_____          Consent signed on _____, 20 ___ at _____AM/PM
Relationship to Patient

_____
Printed Name

## SECTION B – TELEPHONE CONSENT:

I have discussed in a witnessed telephone conversation all of the issues set forth in the CONSENT FOR OPERATION OR SPECIAL PROCEDURE (see front of page) with the patient's surrogate/family member. This included a discussion of the risks, their likelihood, and alternative treatment options as set forth in Section A, above.

Consent was obtained by telephone on _____ , 20___ at _____AM/PM.

Name of person who gave consent: _____

Relationship to patient: _____

_____          _____
Signature of Individual Obtaining Consent          Printed Name

_____          _____
Signature of Witness          Witness's Printed Name

## SECTION C – EMERGENCY CONSENT

The patient is in need of a procedure to save the patient's life, limb or organ and is unable to consent for him/herself and family is currently unavailable despite reasonable efforts.

_____          _____
Signature of Doctor Performing Procedure          Printed Name

_____          _____
Date          Time

This form is available in 12 languages. Please use an interpreter and the appropriate consent form for patients who do not speak English.

Page 2



CONFIDENTIAL - DO NOT COPY WITHOUT AUTHORIZATION

K1

A-76

| | | |
|---|---|---|
| Terence S. Ward<br>*Federal Defender*<br><br>Paul F. Thomas<br>*Branch Chief* | **FEDERAL DEFENDER**<br>**District of Connecticut**<br>**10 Columbus Boulevard,  Floor 6**<br>**Hartford, CT 06106-1976**<br>**Tel:  (860) 493-6260**<br>**Fax: (860) 493-6269** | Deirdre A. Murray<br>Sarah A. L. Merriam<br>Kelly M. Barrett<br>Tracy Hayes<br>Jennifer Mellon<br>*Assistant Federal Defenders* |

## RELEASE OF INFORMATION

This will authorize you to release to the Office of the Federal Defender for the District of Connecticut, 265 Church Street, New Haven, CT 06510-7005 the following:

All records relating to my case.

This authorization further authorizes you to discuss any information relating to my records with my attorney, Kelly M. Barrett, or any other employee of the Federal Defender's Office.

This authorization for the release of records is valid if presented within six months of the date of execution.  Photocopies of this authorization shall be as valid as the original.

Dated at ___Bridgeport___, ___CT___ on this _23rd_ day of _February_, 2015.

___John T. Eastman___
(NAME)
D.O.B.:

WITNESSED:

___Elizabeth McLaughlin___

K2

**AUTHORIZATION FORM FOR RELEASE OF MEDICAL INFORMATION**

Patient Name:                                    Date of Birth:

Social Security Number:

     I hereby authorize the use or disclosure of my individually identifiable health information by:

as described below.  I understand that this authorization is voluntary.  I understand that information is being released pursuant to this authorization at my request and that the information may be subject to re-disclosure by the recipients and no longer be protected by federal privacy regulations.

     Upon presentation of this authorization or a photocopy thereof, you may copy such records for a representative and you may release such medical or diagnostic materials as the representative requests.

**Persons/organizations receiving the information:** Office of the Federal Defender and/or its representatives.

**Please use or disclose the following health information:**

    ☐    The entire medical record (which may include all records, reports and medical materials, including pathology slides, in your possession, custody or control concerning the patient.  "Records" for purposes of this authorization shall include, but not be limited to, correspondence, office notes, doctors' records, laboratory reports, original x-rays, scans or other diagnostic materials, medical reports, tissue blocks, and tissue slides.)

    ☐    The following limited health information:

**Please initial next to each item below if you specifically authorize the release of** health information relating to the testing, diagnosis or treatment for:

 HIV/AIDS
Drug and Alcohol Abuse
Mental Health/Psychiatric Disorders

**Purpose of use or disclosure of patient information:**  for preparation on a pending legal matter.

**The patient must read and sign below:**

1) Unless earlier revoked, this authorization will expire one year from the date signed below.

2) I understand that I may revoke this authorization at any time by notifying the providing organization in writing, but if I do, it won't have any effect on any actions the provider took before it received the revocation.

John T. Eastman                          2/23/15
Signature                                     Date

K3

03/19/15  14:28 FAX 860 713 7478          DAS FSC                                    ☑005
03/19/2015  11:37     8604936269                    FDO HARTFORD                      PAGE  09/17

**))) MidState**
**Medical Center**
⅋ HARTFORD HEALTHCARE
Health Information Management
435 Lewis Avenue
Meriden, CT 06451
Telephone (203) 694-8040
FAX (203) 694-7805

### AUTHORIZATION FOR RELEASE
### OF INFORMATION

Barcode

I, the undersigned patient or legal representative, hereby authorize MIDSTATE MEDICAL CENTER to use or disclose health information including, if applicable, information relating to the diagnosis or treatment of mental illness, drug and/or alcohol abuse and confidential HIV related information regarding:

Patient Name:_____   Birthdate: __/__/__  Medical Record #_____

| The information may be disclosed to and used by the following: | The dates of service and the type(s) of information to be used or disclosed is as follows: |
|---|---|
| NAME:  _____ | Date(s) of Treatment:_____ |
| ADDRESS:  _____ | ☐History & Physical   ☐Laboratory Results |
|  _____ | ☐Discharge Summary   ☐Pathology Reports |
|  | ☐Operative Reports   ☐Cardiology Reports |
| TELE #:   (___)_____ | ☐Consultations   ☐Neurology Reports |
|  | ☐Progress Notes   ☐Radiology Reports |
| **The purpose of this disclosure or use is for the following reason:** | ☐Ambulatory Record   ☐Radiology Films (Radiology Dept) |
| ☐ Medical   ☐ Legal   ☐ Disability   ☐ Insurance | ☐ED Record   ☐Radiation Treatment Record |
| ☐ At the request of the patient or legal representative | ☐Behavioral Health Record |
| ☐ Other (please specify)_____ | ☐Billing (directed to Patient Accounts at 1-888-271-8662) |
|  | ☐Other (please specify) |
|  |  _____ |

This authorization will be valid for a period of one year from the date below.  I understand that I may cancel this authorization at any time by notifying the Health Information Management Department in writing, but if I do it will not have any effect on actions that the hospital took before it received the cancellation.

I understand that my treatment or continued treatment by MidState Medical Center is in no way conditioned on whether or not I sign this authorization and that I may refuse to sign it.

I understand that under applicable law the information disclosed under this authorization may be subject to further disclosure by the recipient and thus, may no longer be protected by federal privacy regulations.

I understand that I may inspect or copy the information to be used or disclosed.

The patient's parent or legal guardian must sign this authorization if the patient is a minor (under age 18) or has a legal guardian.  Minors receiving drug abuse treatment or treatment of venereal disease may sign their own authorization.

I understand that MidState Medical Center may receive compensation for copy and processing fees related to the use/disclosure of my health information under this authorization.

_John T. Ferdinan_____          _3/19/15_____
Signature of Patient or Legal Representative           Date

_____
Witness

*If signed by the Legal Representative, indicate your relationship to the patient below:*
☐Parent ☐Guardian ☐Conservator ☐Executor of Estate ☐Power of Attorney ☐Other_____

xxxxxxxxxxxxxxx
Rev. 01/03

White Copy-Medical Record Copy          Yellow Copy-Patient Copy

K4

03/19/15  14:29 FAX 860 713 7478        DAS FSC                          @007
03/19/2015  11:37    8604936269         FDO HARTFORD                     PAGE  05/1

## AUTHORIZATION TO RELEASE AND/OR EXCHANGE INFORMATION

| | MED. REC. NO. |
|---|---|

| PATIENT'S NAME | TELEPHONE | BIRTH DATE |
|---|---|---|
| John Eastman | ( ) | |

| PATIENT'S ADDRESS (Street, City, State, Zip) | SOCIAL SECURITY NO. |
|---|---|

PARENTS

PARENTS ADDRESS

The undersigned, hereby authorize:

☑ Saint Mary's Hospital, 56 Franklin Street, Waterbury, CT 06706 to disclose to:   Federal Defender
_____
(NAME OF AGENCY / PERSON TO RECEIVE INFORMATION)
(SPECIFY MAILING ADDRESS BELOW)

☐ _____ to disclose to Saint Mary's Hospital, 56 Franklin Street, Waterbury, CT  06706
(NAME OF AGENCY)
the following medical, psychiatric, drug and alcohol abuse, and/or confidential HIV related information from records in its possession:

☑ TREATMENT/DISCHARGE SUMMARY      ☑ SEXUAL HISTORY              ☑ ALL LABORATORY REPORTS
☑ PSYCH. TESTING AND EVALUATION    ☑ MEDICAL HISTORY AND PHYSICAL  ☐ SPECIFIC LABORATORY REPORTS
☑ PSYCHIATRIC CONSULTATION         ☐ X-RAY REPORTS              _____
  ☑ ECG REPORTS                    ☐ X-RAY FILMS _____       _____
☑ EEG REPORTS                      ☑ DRUG & ALCOHOL ABUSE       ☐ OTHER (SPECIFY) _____
                                      HISTORY/TREATMENT

DATES OF TREATMENT

Please mail the requested information to:

☐ SAINT MARY'S HOSPITAL              ☑  Federal Defender
   HEALTH INFORMATION MANAGEMENT
   Release of Information Office         10 Columbus Blvd, Floor 6
   56 FRANKLIN STREET                    Hartford, CT 06106-1976
   WATERBURY, CT  06706

It is my understanding that this information is to be used for the purposes of:
☐ clinical        ☐ diagnosis and    ☐ determining benefits entitlement and to process payment    ☑ other (please indicate
   study             treatment           claims for health care services rendered                      purpose below)
Legal Defense

The authorization to disclose information may be revoked in writing by me at any time except to the extent the action
has been taken in reliance thereon. I understand that my treatment or continued treatment at Saint Mary's Hospital is
in no way conditioned on whether or not I sign this authorization and that I may refuse to sign it.
This authorization shall expire 90 days from date unless specified.    ☐ Expires 6 months from date of patient's signature

                                                                        Reason: _____

I understand that my authorized information may be subject to re-disclosure and may no longer be protected by the
Health Insurance Portability and Accountability Act of 1996.

| SIGNATURE OF PATIENT/CLIENT/LEGAL GUARDIAN | RELATIONSHIP | DATE 3/19/15 |
|---|---|---|
| SIGNATURE OF WITNESS | | DATE |

If this disclosure contains information relating to HIV, behavioral health, alcohol or drug abuse education, training, treatment or
rehabilitation, the following shall apply:

This information has been disclosed to you from records protected by Federal confidentiality rules (42 CFR Part 2). The Federal
rules prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by the
written consent of the person to whom it pertains or as otherwise permitted by 42 CFR Part 2. A general authorization for the
release of medical or other information is NOT sufficient for this purpose. The Federal rules restrict any use of the information to
criminally investigate or prosecute any alcohol or drug abuse patient.

Print    Reset                  
                                Saint Mary's               AUTHORIZATION TO
║█║█║█║█║█║█║                      HOSPITAL                 RELEASE AND/OR
S432                        56 Franklin Street, Waterbury, CT 06706    EXCHANGE INFORMATION

                       ORIGINAL - ATTACH WITH REQUEST    COPY - RETAIN IN REQUESTING DEPT    S432  R8......

03/19/15  14:28 FAX 860 713 7478          DAS FSC                                          ☑004
03/19/2015  11:37      8604936269              FDO HARTFORD                              PAGE  11/17

### Authorization to Disclose Health Information

I, the undersigned, authorize
☐ St. Francis Hospital & Medical Center, 114 Woodland St., Hartford, CT 06105
☐ Mt. Sinai Rehabilitation Hospital, 490 Blue Hills Ave., Hartford, CT 06112
☐ St. Francis Hospital, Georgia Ambulatory Clinics, 100 Asylum Avenue, Hartford, CT 06105
☐ St. Francis Care, Burgdorf / Fleet Health Center, 131 Coventry Street, Hartford, CT 06112
to release my health information as noted below:

**SAINT FRANCIS** Hospital and Medical Center

**Mount Sinai** Rehabilitation Hospital 
a SAINT FRANCIS Care Provider

#### Patient Information

Patient Full Name: _____     Other Names During Treatment? _____

Patient Address: _____     Date of Birth: _____

City: _____   State: _____   Zip Code: _____   Phone #: _____

#### Release Information To

*This box must be complete in order for request to be processed*

Name / Facility: _____     Attention: _____

Address: _____     Phone #: _____

City: _____   State: _____   Zip Code: _____   Fax #: _____

Purpose of Request:   ☐ Personal   ☐ Treatment   ☐ Legal   ☐ Insurance   ☐ Disability
                      ☐ Transfer / Reason _____   ☐ Other: _____

A $.65 per page charge will be applied for all copies released directly to patient or authorized legal representative. The charge does not apply when the records are sent directly to a healthcare provider for ongoing treatment purposes

#### Information to be Released

**Unless otherwise specified, only the following information will be released:**

Inpatient/Same Day Abstract Includes: History and Physical, Discharge Summary (Inpatient only), Reports of Consultations and Operative Reports when applicable
ED Abstract Includes: ED MD Documentation and Nursing Notes                    Clinic / Diagnostic Treatment Visit: Note / Result from Date of Service
Behavioral Health Visit Abstract Includes: Discharge Summary, Biopsychosocial Assessment, and Psychiatric Evaluation

☐ Please provide a 2 year abstract of my records
☐ Please provide my entire medical record for dates:
   From: _____   To: _____
☐ Other – please be specific: include Clinic/Diagnostic treatment type and dates, ED Visit date, and / or Inpatient Dates of Admission

Comments

#### Authorization to Release Protected

*Required – Please complete the check boxes below indicating how protected information should be handled even if the categories do not necessarily apply to the patient's medical records.

Check one
☑ DO  ☐ DO NOT want information about **Mental Health** released
☑ DO  ☐ DO NOT want information about **HIV Tests & Related Information** released
☑ DO  ☐ DO NOT want information about **Alcohol and/or Substance Abuse** released
☑ DO  ☐ DO NOT want information about * _____ released

Initial each line below

"Other sensitive information? *

**STOP** Please confirm that you have put a checkmark and initialed all the protected information categories above regardless if they are applicable or not. If form is incomplete, or if the protected information is not checked and initialed, we may be unable to fulfill this request.

Patient's Signature _____John T. Eastman_____     Date: 3/19/15
(Required for all patients 18 years and older. 16 years and older for psychiatric records. 14 years and older for substance use records)
Signature of Parent or Legal Guardian: _____     Date: _____
(Required for all patients under the age of 18 unless otherwise allowed by law. If not the parent, legal representation documentation must be supplied)

• This authorization will expire 180 days from the date appearing above . I understand that I may revoke this authorization at any time by notifying the Health Information Management Department in writing, but if I do, it will not have any effect on the actions the hospital took before it received the revocation.
• I understand that under the applicable law the information used or disclosed pursuant to this authorization may be subject to redisclosure by the recipient and no longer subject to the protections of the privacy standard.
• I understand that my treatment or continued treatment by Saint Francis Hospital & Medical Center and its affiliates is in no way conditioned on whether or not I sign the authorization and that I may refuse to sign it.
• I understand that I may inspect or copy the information that is used or disclosed.

1911050    9/5/09

# K6







WATERBURY HOSPITAL
Waterbury, Connecticut

## Authorization to Disclose Health Information

1. I hereby authorize **The Waterbury Hospital** to disclose my individually identifiable health information as described here to the person/organization named below. I understand that this authorization is voluntary and that it *may include information relating to AIDS, HIV infection, behavioral health services / psychiatric care, treatment for alcohol and/or drug abuse.*

| PATIENT'S NAME | DATE OF BIRTH |
|---|---|
| ADDRESS | SOCIAL SECURITY NUMBER (last 4 digits only) XXX – XX – |
| CITY          STATE      ZIP CODE | PHONE NUMBER |

Dates of Service: _____

2. Information to be disclosed / obtained:

   ☐ Discharge Summary     ☐ Radiology films/CD
   ☐ History & Physical examination     ☐ Radiology reports
   ☐ Consultation reports     ☐ Psych/Drug/Alcohol/HIV
   ☐ Emergency Room record     ☐ Laboratory tests
   ☐ Entire record (Consideration will be given to releasing the entire record ONLY when subsections of the record will not serve the intended purpose of the disclosure.)
   ☐ Other (please specify): _____
   ☐ Bills

3. I understand that information to be released or obtained may include mental health information in accordance with CGS 52–146(d), substance abuse treatment information in accordance with 42 CFR 2.12.67, and/or HIV/AIDS – related information in accordance with CGS 19a–586(a), except as indicated below.

   ☐ No Mental Health     ☐ No Substance Abuse treatment information     ☐ No HIV/AIDS

4. Name of person(s) / organization(s) to whom the disclosure is to be made:

| NAME | TELEPHONE NUMBER |
|---|---|
| ADDRESS | |
| CITY          STATE | ZIP CODE |

   or name and relationship to patient of the individual authorized to pick up the record(s) being released from the facility:

   _____

5. I am requesting that this information be disclosed for the purpose of (*i.e., Legal reasons, continued care, insurance, another medical opinion, Worker's compensation, research, personal use, Social Security*):

   _____

6. I understand this authorization may be revoked **in writing** at any time, except to the extent that action has already been taken in reliance on this authorization. This authorization shall automatically expire 6 months from the date of signature unless otherwise specified in the space provided here. **DATE OF EXPIRATION:** _____

CN3300A     Rev. 3/10

K7a

03/19/15  14:27 FAX 860 713 7478          DAS FSC                                    ☒003
03/19/2015  11:37      8604936269               FDO HARTFORD                    PAGE   14/17

7.  I understand that I may inspect and copy the information to be used and disclosed under this authorization and that I may receive a copy of this signed authorization form. There may be a fee associated with copying, not to exceed what is authorized by Connecticut State law.

8.  The facility, its employees, officers, and physicians are hereby released from any legal responsibility or liability for disclosure of the above information to the extent indicated and authorized herein.

9.  I understand that Waterbury Hospital may not condition treatment on the provision of this authorization except in cases of research–related treatment protocols or studies being conducted by outside third parties through Waterbury Hospital. In such cases, specific authorization for the research–related treatment protocols / studies must be signed as a condition of participation.

10. I understand that my personal health information will be released in a paper format unless otherwise specified.
    ☐ Electronic Copy

### Notice to Recipients:

*As the recipient of this information, you may use this information only for the stated purposes. You may disclose this information to another party ONLY:*

- *With written authorization from the patient or his or her legal representative;*
- *As required or authorized by state and / or federal law; or*
- *If urgently needed for the patient's continued care.*

### If this disclosure contains information relating to HIV, behavioral health, alcohol or drug abuse education, training, treatment, rehabilitation, or research, the following shall apply:

**This information has been disclosed to you from records whose confidentiality is protected by federal law. Federal regulations (Title 42 CFR Part 2 and Ch. 368x) prohibit you from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulations. A general authorization for the release of medical or other information is NOT sufficient for this purpose.**

### Notice to Individual Requesting the Disclosure:

*Your signature below indicates that you understand that if the organization authorized to receive the information is not a health care provider or health plan, and the information disclosed is NOT protected by the Title 42 CFR Part 2 and Ch. 368x, then the released information may no longer be protected by the HIPAA Federal Privacy Regulations.*

_____          _____3/19/15_____
Signature of Patient or Legal Representative          Date


_____
Printed name of Legal Representative                    _____
                                                         Relationship to patient

_____
Signature of Individual Picking up Record              _____
                                                         Relationship to patient

**For Office Use Only**

CN3300A        Rev. 3/10                                                Page 2 of 2

K7b

 YALE NEW HAVEN
HEALTH

Phone: 203-688-2231
Fax: 203-688-4645

**Authorization to Release/Disclose Protected Health Information**

Patient Name: EASTMAN _____ JOHN ____ _____ _____

(Last)                    (First)           (Middle Initial)    (Maiden/Other Name)

Date of Birth: ███████     Phone: _____    Fax: _____

_____

**Complete Address (street or box#, city, state, zip)**

This information is to be used for purpose of:   ☐ Self  ☐ Further medical care  ☑ Attorney  ☐ Changing Physicians
☐ Disability  ☐ Workers Comp  ☐ Insurance Eligibility/Benefits  ☐ Other_____

I hereby authorize Yale-New Haven Health entity(ies) named below to release information from my medical record to:

Name: FEDERAL DEFENDER _____   Phone/Fax: 860 493 6260 /493 6269

Address: 10 COLUMBUS BLVD Floor 6 ____   City/State: HARTFORD, CT ____   Zip Code: CL106

**Method of Disclosure:**

☑ Mail   ☐ Pick Up   (Photo ID Required)      (Date _____ Time _____ To be Determined by Office Staff)

☐ Fax (Physician or Health Care Providers Only - all information is to be completed

_____

(Name of Physician or Facility)

_____

(Street Address)              (City/State)           (Zip)        (Phone #)          (Fax # )

**Please indicate records you are requesting by checking boxes below:**

☑ Yale-New Haven Hospital  ☐ Hospital of Saint Raphael prior to 09/12/2012  ☑ Bridgeport Hospital  ☐ Greenwich Hospital
☐ Northeast Medical Group  ☐ Smilow Care Center  ☐ Cardiology  ☐ Urology

**Release Content: Date(s) of service requested: From: _____ To: _____**

| | | | |
|---|---|---|---|
| ☐ History & Physical | ☐ Path Report | ☐ Lab Results | ☐ Stress Test |
| ☐ Discharge Summary | ☐ ED Record | ☐ X-ray CD | ☐ Laboratory Results |
| ☐ Emergency Visit | ☐ Progress Notes | ☐ X-Ray Report | ☐ Billing Record |
| ☐ Procedure/Operative Report | ☐ PT/OT/Speech Notes | ☐ Pathology Report | ☐ Echocardiogram |
| ☐ Immunization | ☐ Cancer Center | ☐ EKG | ☐ Other_____ |

**For Internal Use Only:  MRN:_____  CSN: _____**



K8a

F4918Eng  (Rev.  01/14)

03/19/15  14:27 FAX 860 713 7478          DAS FSC                                    ☒002
                                                                                    PAGE   17/17
  03/19/2015   11:37     8604936269              FDO HARTFORD

***HIV-BEHAVIORAL HEALTH- DRUG/ALCOHOL INFORMATION contained within the medical records indicated above will be released through this authorization unless otherwise indicated below. (Any records containing any of this information requires signature from age 13 and older to sign for release of records)***

Indicate which you do NOT want released with your initials:

____HIV  ____Substance Abuse which includes Alcohol & Drug Abuse  ____Pregnancy Test  ____Genetic Testing

____Behavioral Health/Psychiatric  ____Sexually Transmitted Disease  ____Other (please list)_____

- The authorization is valid for one year from the date below. I understand that after I have signed this form, I may change my mind and cancel (revoke) this authorization at any time by contacting in writing the YNHHS Medical Information Unit.  Cancellation of the authorization will not apply to information that has already been released based on this authorization.

- I understand the information disclosed in response to this authorization may be subject to re-disclosure by recipient, and will no longer be protected under the terms of this authorization of by federal privacy regulations.

- I understand that this authorization is voluntary and my treatment by YNHSS is in no way conditioned on whether or not I sign this authorization and that I may refuse to sign it.   If I do not sign this form, payment for this care will only be affected if my health care insurer is requesting this information and is permitted to require this authorization.

- I understand that I may see and copy the information described on this form if I ask for it. There is a charge for copies in accordance with Connecticut law.

- The parent or legal guardian must sign this authorization if the patient is a minor (under age 18).

Authorization can be sent to:      Medical Information Unit
                                    PO Box 9555
                                    New Haven, CT  06535

Printed Name: _John T. Eastman_____   Date: _3/19/15_  Time: _2:00pm_

_John T. Eastman_____
Signature of Patient or Authorized Representative
**must provide proof of authority (except parent of a minor)

**Please check relationship to patient and if other than patient, reason patient cannot sign**

☐ Self  ☐ Parent  ☐ Legal Guardian  ☐ Executor/Administrator of Estate  ☐ Healthcare Representative  ☐ Conservator
☐ Other Authorized Legal Representative _____(indicate)
Reason -  ☐ Incompetent   ☐ Disabled
AUTHORIZATION FOR PERSONAL REVIEW OF MEDICAL RECORD
I request that I be permitted to review my medical record. I understand that any amendments can be requested by doing so on the Patient Amendment Form.

Printed Name: _____  Date: _____  Time:_____

Patient's Signature: _____  Phone (required) _____

You will be notified by phone for appointment time to view

K8b

John Eastman
John Eastman
John Eastman
John Eastman
John Eastman

RECEIVED

JUN 12 2015

OFFICE OF THE
FEDERAL DEFENDER
HARTFORD, CONNECTICUT

K9

DCF 2131(F)      **AUTHORIZATION FOR THE RELEASE OF INFORMATION FROM**
Revised 1/13        **THE DEPARTMENT OF CHILDREN AND FAMILIES**



I _____authorize the Department of Children and Families to disclose to
**(name of person granting permission)**
_____
**(name, address and telephone number of person, institution or organization receiving the
information)**
information/records pertaining to _____
                                              **(name and DOB of person who is the subject of the record)**

Type of records to be released (**check all that apply**):

☐ Psychiatric ☐ Psychological ☐ Medical ☐ Education ☐ Medication
☐ Psycho-therapy notes (NOTE: a request for psycho-therapy notes cannot be combined with a
   request for any other records).
☐ Other (**explain**)
☐ I specifically authorize the release of the following sensitive information from my record
   (**initial all that apply**):

   ┌─────────────────────────────────────────────────────────────┐
   │  Substance abuse (alcohol/drug)                              │
   │  Confidential HIV/AIDS related information                   │
   │  Sexually transmitted diseases                              │
   │  Genetic testing                                            │
   └─────────────────────────────────────────────────────────────┘

Purpose of authorization/disclosure:

_____

The nature and extent of the information to be disclosed is the entire record unless otherwise
specified below:

_____

This authorization, if not cancelled, will expire on _____or in one year, whichever occurs first.
                                                    **(Date)**

I understand that refusal to sign this authorization form will not affect my right to obtain present
and future services, except where disclosure of the records requested is necessary for services.  I
also understand that I may revoke this authorization by notifying DCF or the named recipient in
writing.  A revocation of this authorization will not apply to any records disclosed before the
authorization is revoked.  Pursuant to C.G.S. 17a-28(k) the information disclosed pursuant to this
authorization is not subject to re-disclosure by the recipient without a separate authorization for
that purpose except as provided by said statute.

*John T. Eastman*
Signature of person authorizing disclosure or authorized representative            Date

Check if this form has been signed by a person other than the subject of the record:

☐ Parent/guardian   ☐ Attorney   ☐ Guardian ad litem   ☐ Other (**explain**)

**NOTE:  Confidentiality of psychiatric, drug and/or alcohol abuse and HIV/AIDS records is required
and no information from these specific records shall be transmitted to anyone else without written
consent or authorization under Connecticut General Statutes, Chapters 899c and 368x and Federal
Regulations 42 CFR 2.  These laws prohibit the recipient of the record from making any further
disclosure without specific written consent of the person to whom the record pertains.  A general
authorization for the release of this information is NOT sufficient for this purpose.**

K10

## Authorization for Release of Non-Health Information
### Connecticut Department of Correction

CN 4402
REV 6/30/09

Inmate name: John Eastman

Inmate number: 181388

Date of birth: ███

I hereby authorize the State of Connecticut, Department of Correction and its staff at the *(list facility)*:

To disclose the following information from my master file:

Date(s) of admission/discharge.

Other master file information *(specify)*:

To disclose the following information *(specify)*:

Individual/organization to receive information: Federal Defender, 10 Columbus Blvd, Fl 6, Hartford, CT 06106

The specific purpose of this request:

Legal defense

I understand that this authorization is voluntary and that I may withdraw my consent at any time prior to the release of the indicated information. My consent, if not withdrawn, will continue throughout my term of supervision by the DOC regardless of my placement and including any time spent on parole or community supervision.

Return to (facility stamp) :

John T. Eastman                3/19/15
requestor signature                date

_____
witness signature                date

_____
parent/guardian signature        date
(if requestor is a minor)

K11

A-88



K12

# Customer Solutions Commitment

**Sears Outlet Stores Promise**
- Save 20-60% (or more) off regular retail prices everyday on almost everything in the store
- Nobody beats our prices–or we will match the price PLUS give you 50% off the difference[1]
- Manufacturer's original warranty included on everything we sell (manufacturer defects)
- Full service retailer offering credit, delivery, installation[2] and protection agreements
- Knowledgeable service with a smile, guaranteed

Please visit us on-line at **WWW.searsoutlet.com**

[1]See store for price match policy details, exclusions apply
[2]searsoutlet.com/searsonblock
Copyright© Regular Retail Prices, exclusions apply

**Warranty / Master Protection Agreement  3 Yr___  5 Yr___  Decl L___**
☐ Master Protection Agreements are available and provide added benefits, peace of mind
  - Full Warranty Coverage plus more
  - Yearly-Preventive Maintenance Check
  - Peace of Mind (Food reimbursement / No Lemon Policy)

## Product Accessories
☐ Required hookups and accessories are available for these products
**Refrigeration** ☐ Filters ☐ Water line
**Laundry** ☐ Vent ☐ Gas Flex Lines (if applicable) ☐ Power Cord
**Cooking** ☐ Gas Flex Lines (if applicable) ☐ Power Cord ☐ Dishwasher Hook up kit
**Electronics** ☐ HDTV antenna (free HDTV) ☐ Extra Remote ☐ High Quality Cables
**Appliances** ☐ Touch-up Paint ☐ Stainless Steel Cleaner

## Merchandise Pick up / Delivery
☐ We will gladly hold you products for up to 3 days after purchase
☐ We offer professional delivery services 1-800-341-2517
☐ If you elect to Take it Home Today... ask about easy hook up instructions
☐ We will help load your item for you but are not responsible for the vehicle or securing items
☐ Tie Downs and other protective materials for take with merchandise are available for purchase
☐ Delivery Customer received copy of Delivery Guidelines and will be contacted the night before
  scheduled delivery date with delivery time. Questions related to delivery please call 1-800-341-2517
☐ We will gladly honor our delivered merchandise according to Delivery Guidelines provided only
  with the appropriate required Sears purchased hookup kits. Customer Declined hookups (customer
  initial_____)(without hookups item will be delivered without setup or connection)

## Installation  ☐ N/A
☐ Professional installation services provided by Sears Authorized Contractors ☐ All services provide a
  one year installation warranty and added peace of mind (please see receipt for installation contact
  phone numbers)

## Convenient Credit Offers  ☐ Sears ☐ Sears Gold MasterCard ☐ Sears Charge +
☐ Great benefits and added buying power available when using Sears Credit

## Return Policy - Satisfaction Guaranteed or Your Money Back
☐ We will be happy to accept your "In Warranty" returned product after a Product Repair Technician
  has determined the product is not repairable_____ (customer initial). Please contact 1-800-
  4MY-HOME (1-800-469-4663) to schedule service.
**Note—**For Nordic Track Fitness service refer to your owner's manual and call 888-825-2588
Our goal is that you are completely satisfied with your purchase, if for any reason you are not satisfied, simply return your purchase in its original
packaging, with your receipt within 90 days of your purchase; 30 days for Home Electronics, Customized Jewelry and Mattresses for a refund or
exchange. Video Games, CD, DVD must be unopened for a refund or exchange. If you are not satisfied with your purchase after these time periods,
please let us know. Your satisfaction is important to Sears.
**Restocking/Cancellation Fee Policy**
A 15% restocking fee is charged on Home Electronics returned without all of the original product packaging (incl. original box) and accessories;
Mattresses, built to Home Appliances, and special orders ex Hardware, Spotting Goods, Lawn & Garden, and Automotive merchandise. Home
Electronics sold in sealed boxed and returned in opened boxes may, but need not be, determined to have been used. Special orders cancelled after 24
hours of purchase are subject to a 15% order cancellation fee.

## Merchandise Disposition
**Fuel Type of Product(s) Selected**
  ☐ LP Gas   ☐ Natural Gas   ☐ 110 Electric   ☐ 220 Electric
☐ Cord Condition Verified  ☐ Ice Maker/Refrigeration Water Line Checked
☐ Measurements for product and space have been verified to ensure proper fit.
☐ Customer Dimensions:  H_____ W_____ D_____
☐ Product conditions have been identified and notated below.
  Item:_____ Plus #_____ Piece #____ of____

Controll/
Tester ID_____

CONTROL PANEL
(if applicable)

OUT: Sell = $_____     (List Sell $ in Special Instructions for delivery at POS)

I am aware of Sears Customer                              Date:
Solutions Commitment:_____ ___/___/___

Customer Email Address _____@_____

Delivery /MPU Associate:                                  Date:
Confirmed Merchandise Disposition _____ ___/___/___

**We appreciate your business!  Tell us how we did and you could win a $4,000
Sears gift card.  Please visit our website at www.searsoutletfeedback.com within
7 days of your purchase to qualify.  We strive to satisfy every customer! We
want your return business and recommendations to your friends! Please let us
know how we did!  Refer to the 12-digit salescheck listed above needed to
complete the survey.**

White - Customer Copy    Yellow - Detail Copy    Pink - Merchandise Copy    Gold - MDO Copy
V1.3  2/10                                    Reorder # 702ROS-6084-90F

---

SEARS
NEWINGTON - OTLT  04324
65 HOLMES RD
NEWINGTON, CT  06111-1709
860-665-8101

SALESCHECK
0432430037858

DELIVER TO:        CUSTOMER

PURCHASER:      JOHN EASTMAN
CUSTOMER:       JOHN EASTMAN
ADDRESS:        157 CONGRESS AVE
CITY/STATE:     WATERBURY, CT
ZIP CODE:       06708
PHONE:
  203-982-9939  203-565-1030

DELIV. DATE:       05/25/10

DELIV INSTR:
SEARS4324/ DRYER/ MPA DECLINED/
PLUS#43394

TRAN#  PG-STORE  REG#   ASSOC#
7858   10 04324  303    534B
RINGING ASSOC #  534B
MERCHANDISE SHUTTLED
CENTRAL DELIVERY
3026 87562991 KM HE2.DRY CLR  639.93T
STORE STOCK
SETUP AND LEVEL
   SALE CREDIT $           240.00T-
NON-REFUNDABLE DELIVERY FEE  65.00T
             SUBTOTAL      464.93
          TAX 06.000%       27.89
             DEPOSIT       300.00 -
      AMOUNT TENDERED      300.00
        CHANGE DUE            .00
CARD TYPE:     DEBIT CARD
ACCT #:        W5951
05/22/10       DEBIT TOTAL  192.82

RC:  0949-4431-9063-1719-0619

PICKUP NUMBER
0432430037858

CALL FOR INFORMATION:
DELIVERY       (800)341-2517
PARTS          (860)727-3727
INSTALLATION   (800)326-8738
SERVICE        (800)469-4663

*****************************
SEARS
OUTLET STORES
VALUE YOUR FEEDBACK
*****************************
TELL US ABOUT YOUR EXPERIENCE AND YOU
COULD WIN A $4,000 SEARS GIFT CARD.
PLEASE VISIT OUR WEBSITE WITHIN 7 DAYS
OF THE DATE OF PURCHASE.

DO NOT USE A SEARCH ENGINE.
TYPE DIRECTLY INTO THE ADDRESS BAR AT
THE TOP OF YOUR INTERNET BROWSER:

WWW.SEARSOUTLETFEEDBACK.COM

TO COMPLETE THE SURVEY YOU WILL NEED
THE 12 DIGIT SALESCHECK NUMBER ON

K13

A-90

B-58 REV. 12-2006

**CHANGE OF ADDRESS CARD FOR OPERATORS' LICENSE(S), VEHICLE REGISTRATION(S), VESSEL REGISTRATION(S) AND/OR ORGAN/TISSUE DONOR STATUS**

STATE OF CONNECTICUT - DMV
On The Web At ct.gov/dmv

**INSTRUCTIONS - PLEASE PRINT INFORMATION**

1. Joint owners may use this form if both operators' license numbers are listed.

2. Card must be signed and dated by all applicants.

3. Copy information from your current registration. If more than four (4) marker plate numbers, use additional change of address cards.

4. Keep your license(s) and registration(s). On the registration(s), cross out the old address and write the new address in the space provided. Affix the new address label to the back of your license(s). Should you opt to be an Organ/Tissue donor, affix the red heart sticker to the front of your license(s). Labels can be obtained from any DMV Office or Police Department.

**CHECK CHANGES**

- [ ] OPERATOR'S LICENSE
- [ ] MOTOR VEHICLE REGISTRATION
- [ ] VESSEL REGISTRATION
- [ ] YES, I WOULD LIKE TO BE AN ORGAN/TISSUE DONOR
- [ ] CHANGE OF ADDRESS IS NOT FOR VOTER REGISTRATION PURPOSES

**LICENSE INFORMATION - OPERATOR'S LICENSE NO.(S) (9 digits)**

1: ▓▓▓▓▓▓▓▓▓
2:

**VESSEL INFORMATION**

| STATE | NUMBER | EXPIRATION DATE |
|---|---|---|
| | | Month / Year |

**REGISTRATION INFORMATION**

| TYPE OF PLATE (Camper, Passenger, Comb, etc) | MARKER PLATE NUMBER | EXPIRATION DATE |
|---|---|---|
| | | Month / Year |
| | | Month / Year |
| | | Month / Year |

NAME (Last, First, Middle Initial) - APPLICANT 1
CUSTER John

NAME (Last, First, Middle Initial) - APPLICANT 2

(NEW) MAILING ADDRESS (No. and Street, City or Town, State, Zip Code)
157 Congress Ave Waterbury, CT. 06708

RESIDENT ADDRESS, IF DIFFERENT FROM MAILING ADDRESS

Tax Town - Connecticut town where vehicle in the normal course of operation most frequently leaves from, returns to or remains.

FORMER ADDRESS

SIGNATURE
X [signature]     DATE     SIGNATURE
X [signature]     DATE 4/20/11  X

The information provided to the Commissioner of Motor Vehicles herein is subscribed by me, the undersigned, under penalty of false statement, in accordance with the provisions of Section 14-110 and 53a-157b of the Connecticut General Statutes. I understand that if I make a statement which I do not believe to be true with the intent to mislead the commissioner, I will be subject to prosecution under the above-cited laws.

If you prefer to use an envelope, it must be addressed to the address shown on the front of this card to the attention of DATA Entry-Change of Address Unit.

K14

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

             vs.          :   CRIMINAL NO.  CR  (  )

JOHN EASTMAN          :   November 24, 2015

**AFFIDAVIT OF JOHN EASTMAN**

I, John Eastman, hereby state as follows:

1. My name is John Eastman.  I am the defendant in this case.  I make this statement freely and swear, under penalty of perjury, that it is true.

2. On the evening of November 10. 2012, at approximately 6:00 PM, I was in my home, which I share with my mother, Linda Eastman, at 157 Congress Avenue, Apt. #3, Waterbury CT, 06708.

3. Two men who verbally identified themselves as police officers knocked on the door and said they wanted to ask me some questions.  They did not display identification or give their names.

4. When I opened the door, the men stepped inside, forcing me to stumble backwards. I did not invite them in, nor did they ask if they could enter.

5. The man I later learned was Detective Morgan began asking me about my Skype habits, and I agreed to go with him to the police station for an interview.

6. I was told at that time that I was not under arrest, and the request to go to the station was phrased as a request, not an order.

7. I was then handcuffed and told to sit on the couch while Detective Morgan began to search the apartment. I was told "Relax, Don't move" by the man I now know was Officer Terni, and he placed his hand on my shoulder as if to sit me down.

8. Detective Morgan looked inside packed boxes and desk drawers in the living room, entered the kitchen without permission and began looking through counter drawers and into the pantry area, and entered my Mother's bedroom, where she had been asleep, without asking permission, waking and surprising my mother.

- 1 -

9.  My mother, who had been asleep in her own bedroom, came out and also demanded of the officers that they show some authority for the search they were conducting.  The officers ignored both of our requests.

10. When I said I needed to use the bathroom, and rose to go do so, I was told to stop by Officer Terni, who then took the handcuffs off and allowed me to use the bathroom, but insisted that I keep the door open so he could observe me.  He also told me not touch anything in the cabinets and to keep my hands free.  I asked for some privacy, and he turned his head away, but the door remained open.

11. When I emerged from the bathroom, I saw Detective Morgan in my bedroom, looking inside dresser drawers. I again protested that he had no right to conduct any such search.  He again ignored me, and disconnected the computer tower in my bedroom from its screen and picked it up.  He shook it and said "Is there a hard drive in here?"  I replied that he was not supposed to be touching it.

12. I was then put in handcuffs again and driven the to the Waterbury police station. I was placed in the back seat of the police officer's vehicle in handcuffs.

13. When we arrived at the police station, Detective Morgan asked me my age, which I told him, and he then explained that he was investigating a complaint from some young women in Vermont about an interaction they had had on Skype. He read me a statement from a Vermont State Trooper about the incident. He asked me if I knew anything about the incident.  I denied it, and demanded the return of my computer.

14. At that point Detective Morgan became confrontational. He jumped up from his chair and put his face very close to mine. He said that if I did not cooperate with him he would lock me up and make my bond $250,000, adding that "it's the holiday weekend and you won't go to court until Tuesday and you know how the conditions are in our city jail.... Do you want that?"

15. I believed I was under arrest, so I asked what the charges were and requested a lawyer, pointing out to Detective Morgan that he had requested a simple interview, and instead handcuffed me, conducted an illegal search of my home, and threatened me.

16. Detective Morgan began to type up a statement.  He did not ask, nor did I answer, any further questions about the Vermont incident or my past.  Detective Morgan printed the statement, which to the best of my knowledge is the one provided by the government.  I read it but refused to sign it, nor did I acknowledge any of the facts in it as true.

- 2 -

17. After my refusal to sign the statement, Detective Morgan told Officer Terni to drive me home. When he did so I asked for the return of my computer and inquired whether he had taken anything else from my home. Detective Morgan ignored my requests and I left with Officer Terni. In the car with Officer Terni I again requested the return of my computer and was told I would get it "soon" or "in three days." He added that the police wanted to examine the Skype records on the machine.

18. When Officer Terni dropped me at my home he gave back to me four cell phones they had taken from my house. Despite what I had been told I did not hear from either man again, nor was my computer returned.

19. I have been shown the documents provided by the government to my attorneys titled "Consent to Search Form," (Disc-0038); Voluntary Statement Rights Form (Disc-0039); "Advisement of Rights" (Disc-0040) and "Voluntary Statement (Disc-00036-37). I did not sign or initial those documents. I do not know whose signatures/initials are on those forms; they are not mine.

20. The above statement is true and accurate to the best of my knowledge.

21. I declare under penalty of perjury that the foregoing is true and correct. Executed on November 25, 2015.

X _John Eastman_

John Eastman

Sworn before me this 25 th day of November, 2015.

X

Witnessed:

- 3 -

A-95

# EXHIBIT C

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:  CR |
| vs. | : | |
| JOHN EASTMAN | : | November 23, 2015 |

**AFFIDAVIT OF LINDA EASTMAN**

I, Linda Eastman, hereby state as follows:

1. I live at 157 Congress Avenue, Apt. #3, Waterbury CT, 06708.  On the evening of November 10, 2012, I was in my home, which I shared with my son John Eastman.

2. I finished with work and came home after work.  It was dark outside.  I decided to take a nap. While I was asleep in my bedroom I heard a banging on my bedroom door.  The door opened, and I saw the person I now know is Detective Morgan walk into my bedroom.  I jumped up, because I was startled, and I asked him who he was.  He did not identify himself.  I only learned his name when I saw a newspaper story about him later.  He did not produce a search warrant nor did he show me any kind of credentials.  He looked around in my bedroom without my permission.

3. Detective Morgan and I walked out of my bedroom.  I was wondering where my son, John Eastman, was.  I saw John sitting on the couch in handcuffs.  The other officer was watching over John.  I saw Detective Morgan searching around the house, looking in drawers, cabinets, etc, without my permission.

4. Detective Morgan told me to take a seat.  I sat down at the kitchen table.

5. I saw and heard my son ask permission from the police officers to use the bathroom.  The officers left the bathroom door open while John was using it.

6. I heard my son repeatedly ask Detective Morgan why the officers were treating him that way. Detective Morgan ignored those questions.

7. In general, Detective Morgan treated my son and I with indifference bordering on contempt, ignoring our repeated requests for an explanation of his authority or for an explanation of what he was looking for. Eventually the police officers left with my son and a computer they took from the home.

8. I never consented to the search of my home or the computer. I specifically questioned the officers on what they were doing in my home since they had no paperwork and appeared to have no authority to be searching my home.

9. I was never shown a warrant. I was never shown a consent to search form. I never received a receipt for the property that was taken.

10. I saw no evidence that my son consented to the search of the house and to the search and seizure of the computer. I never heard him agree verbally to the search and seizure of the home and computer.

11. On August 7, 2013, I filed a complaint with the Waterbury police department about the behavior of the officers on that night. I have never received an explanation for their behavior.

12. The above statement is true and accurate to the best of my knowledge.

13. I declare under penalty of perjury that the foregoing is true and correct. Executed on November 23, 2015.

x _Linda Eastman_

Linda Eastman

Sworn before me this 23 rd day of November, 2015.

x _Darcey Beauvolei_

_____, Federal Defender Office

- 2 -

A-98

# EXHIBIT D

A-99

WARS

# INCIDENT AND OFFENSE REPORT

### WATERBURY POLICE DEPARTMENT

| | |
|---|---|
| 1. COMPLAINT NUMBER | 2012-066882 |

| 2. FILE NUMBER | 3.STATUS | 4. OFF. I.D. | 5 DATE OPENED | 6. DATE CLEARED | 7. INCIDENT OR OFFENSE |
|---|---|---|---|---|---|
| | 3 | 522 | 10/25/2012 | 05/07/2013 | Crimes Against Children |

| 8. MAJ. CD. | 9. NAME OF PLACE, BUSINESS OR FIRM | 10. ADDRESS OF OCCURENCE |
|---|---|---|
| 26 | | 157 Congress Ave. 3rd floor |

| 11. LOC. CO. | 12. DAY OF WK. | 13. DATE OF OCCURENCE | 14. TIME | 15. WEATHER | 16. OBJECT OF ATTACK |
|---|---|---|---|---|---|
| | TU | 10/25/2012 | 0924 | C | Other |

| 17. WEAP. TOOL, MEANS OF ATTACK OR ENTRY | 18. POINT OF ENTRY | 19. METHOD OF ATTACK |
|---|---|---|
| Other | | Other |

| VICTIM: 20. AGE | 21. SEX | 22. RACE | 23. VICTIM'S NAME | | | 24. VICTIM'S ADDRESS |
|---|---|---|---|---|---|---|
| | | | LAST | FIRST | M. | |
| | | | LAST | FIRST | M. | |
| | | | LAST | FIRST | M. | |

| 25. COMPLAINANT'S NAME | 26. COMPLAINANT'S ADDRESS | 27. PHONE |
|---|---|---|
| Jollymore   Trooper   M | | |
| LAST   FIRST | | |

| 28. DESCRIPTION OF PLACE | 29. NATURE OF LARCENY |
|---|---|

| 30. EST. VALUE OR TYPE OF STOL.PROP | CURRENCY | JEWELRY | FUR/CLOTH. | OFFICE EQUIP. | TV/RADIO | FIREARM | MISC. | TOTAL |
|---|---|---|---|---|---|---|---|---|

| 31. OTHER OFFICERS AT SCENE | 32. WITNESSES: | | | 33. ADDRESS |
|---|---|---|---|---|
| | LAST | FIRST | M | |
| | LAST | FIRST | M | |
| | LAST | FIRST | M | |
| | LAST | FIRST | M | |

| 35. PERSONS ARRESTED - NAME | | | 36. ADDRESS | 37. CHARGE |
|---|---|---|---|---|
| LAST | FIRST | M. | | |
| LAST | FIRST | M | | |
| LAST | FIRST | M | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M. | | |
| LAST | FIRST | M | | |

| 38. OFFICER REPORTING   SIGNATURE | 39. POST/BEAT | 40. DATE OF REPORT | 41. COMP. OPER. |
|---|---|---|---|
| Det. J Morgan 522 | DB1 -A | 05/07/2013 | |

DISC-000028

42. NARRATIVE:                                                                    Complaint Num: 2012-066882

**DETAILS OF OFFENSE:**  Describe important information as to why or how the incident occurred; physical evidence; include serial numbers of property if available; vehicles used if any; any suspects; etc.

On 10/25/12, the Waterbury Police Department received a complaint from Trooper Eric Jollymore of the Vermont State Police. Trooper Jollymore stated that he had spent a few weeks investigating a case that led him to believe that the crime had originated in Waterbury. Trooper Jollymore faxed his investigative reports to the Waterbury Police Department for further investigation.

Trooper Jollymore's reports indicated that on 9/13/12 he spoke with ███████████████ ██████████████████ who informed him that her 11 year old daughter ████████ ███████████████, had a sleep over with three other girls, 11 and 12 years old, at their residence on 9/8/12 through 9/9/12. The three other girls were ██████████████████████████████████, ██████████████████████████████, and ██████████████, █████████████████████████████████. The mother stated that during the sleep over, the girls were using the computer and using a program called "Skype" to speak with people over the Internet.

Trooper Jollymore's report indicated that he spoke with ████ about the incident. She stated that she and her friends had been speaking to an individual using the name "Harry.Styles888" during the time they were using "Skype". ████ informed Trooper Jollymore that they were under the impression that they were in fact speaking with the individual Harry Styles that is a member of the musical group "One Direction". She stated that during the conversation "Harry.Styles888" requested that they activate their web cam so that he could see them. She stated that they told "Harry.Styles888" that they were 13 years old, and he informed them that he was 18 years old. ████ stated that once they agreed and activated their web cam, "Harry.Styles888" asked them if they could pose in the sexual position called "Doggy Style" in front of the web cam for him. ████ stated that they did not perform the act, and the conversation ended shortly after this. She also informed Trooper Jollymore that they were suspicious of the individual when he turned on his web cam. ████ stated that it appeared that there was a still picture of the Harry Styles from the group "One Direction" on the screen and not an actual person.

On 10/13/12, Trooper Jollymore applied for, and was granted, a court order to Skype for the account registration information for the screen name "Harry.Styles888".

On 10/24/12, Trooper Jollymore received the results of this court order from Skype. The information indicated that the "harry.styles888" user account was activated on 7/27/12 at 0511 hours UTC from IP address 76.23.191.201. Trooper Jollymore performed a check and determined that IP address 76.23.191.201 is assigned to Comcast Cable to a user in Waterbury, CT.

I performed an Internet search for Skype user name "Harry.Styles888" and found that there are numerous complaints about this user impersonating the singer Harry Styles.

On 11/1/12, I applied for, and was granted, an Ex-Parte Order requesting the Comcast Cable account information for the individual using IP address 76.23.191.201 on 7/27/12 at 0511 hours UTC.

On 11/8/12, I received a response from Comcast Cable indicating that the user account that had been assigned IP address 76.23.191.201 on 7/27/12 at 0511 hours UTC belonged to John Eastman of 157 Congress Ave. 3rd floor, Waterbury, CT. The Comcast Cable account number is 8773402201040660 and has been active since 5/27/08.

On 11/10/12, Det. Terni and I proceeded to 157 Congress Ave. 3rd floor to locate and speak to John Eastman. Upon knocking on the apartment door, we were met by Mr. John Eastman D.O.B. ████████, who allowed us inside. Once inside, I advised Mr. Eastman of the ongoing investigation. Mr. Eastman stated that he wished to fully cooperate in the investigation. Mr. Eastman stated that he had a desktop computer in his bedroom that he uses, and that he was willing to voluntarily give the computer to the detectives for further investigation.

| 43. FOR FURTHER INVESTIGATION: | | | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE | |
|---|---|---|---|---|---|
| DETECTIVE ☐ | YOUTH ☐ | V&I ☐ | OTHER: EXPLAIN ☐ | 44. SUPERVISOR APPROVING | 45. DATE 5-10-13 |

ORIGINAL **COPY**                        REV. 1-92 CS

42. NARRATIVE:                                                                    Complaint Num: 2012-066882

**DETAILS OF OFFENSE:**   Describe important information as to why or how the incident occurred; physical evidence;
include serial numbers of property if available; vehicles used if any; any suspects; etc.

On 11/10/12, Mr. Eastman signed a Consent to Search Form allowing detectives to take his HP Pavilion
model p2 desktop computer S/N 3CR22116SQ and perform a complete computer forensic examination on
it.

On 11/10/12, Mr. Eastman voluntarily agreed to go to the Detective Bureau to speak with detectives
about the case. While in the Detective Bureau, and after being advised of his Constitutional Rights and
agreeing to waive those Rights, Mr. Eastman gave, in part, the following voluntary sworn statement:

"I use the Internet to chat with girls on different web sites. I use the program Skype to chat with girls
because you can use the web cam to video chat and see them while chatting. I am sexually attracted to
very petite girls. I like girls that are like 14 years old and have started to develop. Because of this, I made a
couple of screen names on Skype that were the names of members of the singing group One Direction. I
used their names because I know the names would attract teenage girls to contact me. One of the screen
names I used is "harry.styles888". I also have an email address "stylesharry446@gmail.com". I log on to
Skype with the screen name and just wait for girls to contact me. When a girl contacts me, I start chatting
with them. If they want to see me on the web cam, I will have a You Tube video of the singer from some
old video footage ready to play and then point my web cam at the computer screen so the girl thinks that
she is talking to the real singer. I will then try talking to the girl in a sexual manner to see if she will talk
back. I will ask if the girl will pose in the sexual position doggy style with their ass facing the camera. I ask
them to do this because I think it is the best pose to see a girl. My hope is that the girl will show me herself
on camera and then pose in a sexual manner, or perform some kind of sex act for me to see. I know that I
have chatted with some girls that were between like 12 and 15 years old, we chatted about sex and they
posed in a sexual manner or performed a sex act so I could watch on the web cam. Anytime that I can get
the girls to perform any sex acts, I will masturbate until I ejaculate.

While we were discussing the investigation, Det. Morgan informed me about a couple of girls from
Vermont that had complained to their parents about me asking them to pose doggy style on Skype. I do not
remember these girls because I talk to so many girls and these girls did not pose for me.

I also go to other porn sites called Motherless.com and Jailbait."

On 11/10/12, Mr. Eastman was allowed to leave the police department without any further incident
pending the completion of the computer forensic examination of his desktop computer.

"Skype" is a computer program that allows users to communicate with each other over the Internet by
video through the use of a webcam, by voice through the use of a microphone, and through instant
messaging by text. Users may also use the program to make phone calls to other individual's home and
cell phones. "Skype" users can also transfer files to each other through the use of the program.

A complete computer forensic examination requires that the examiner look into all folders and files on a
hard drive, including the "Unallocated Clusters" area. The "Unallocated Clusters" area of the hard drive
being the area of the drive which is free space for the computer to use to write new files. Files that have
been deleted are placed into the "Unallocated Clusters" area of the hard drive, and as a result, this data
remains behind for discovery through the use of computer forensic tools and software until the overwrites
the area with another file. A computer user has the ability to move files from one location to another within
the file system, rename files, change file extensions, compress or encrypt files and folders, or delete files
prior to the forensic examination. By performing a complete computer forensic examination on all files,
folders, and the "Unallocated Clusters" area of the hard drive, the examiner is able to determine if any
evidence is located in any location of the hard drive.

On 11/10/12, I began a computer forensic examination of the computer provided by Mr. Eastman
looking for evidence related to the case. The computer was brought to the Computer Crimes Unit where I

| 43. FOR FURTHER INVESTIGATION: | | | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE | |
|---|---|---|---|---|---|
| DETECTIVE ☐ | YOUTH ☐ | V&I ☐ | OTHER: EXPLAIN ☐ | 44. SUPERVISOR APPROVING | 45. DATE  5-10-13 |

COPY                              REV 4-16-05

DISC-000030

42. NARRATIVE:                                                    Complaint Num: 2012-066882

**DETAILS OF OFFENSE:** Describe important information as to why or how the incident occurred; physical evidence; include serial numbers of property if available; vehicles used if any; any suspects; etc.

removed the hard drive from it. The hard drive removed from the computer was a Hitachi model HDS721050CLA662, 500GB, S/N JP1572FL0375ZK.

I am an EnCase Certified Computer Forensics Examiner and have received formal training in the use of EnCase software and numerous write blocking devices and have experience using both for the forensic acquisition and analysis of computer data. I also have training and experience in the use of various other computer forensic software tools that have been tested and accepted for use in computer forensic examinations. A forensic acquisition of the hard drive was then acquired. The hard drive was connected to a hardware write blocking device to prevent any alterations to the original data during acquisition. The hardware write blocking device enables the safe acquisition of source media in a Windows operating system. EnCase versions 6.19.3 and 6.19.6 software were utilized for the forensic acquisition and examination. If needed, other computer forensic tools were utilized along with EnCase. to ensure that a complete computer forensic examination had been performed.

EnCase is a forensic data acquisition and analysis program. EnCase is completely noninvasive and the original computer data is not altered in any way during acquisition. The data acquired from the target drive is stored on a Waterbury Police Department computer's hard drive which is used as a staging drive. The staging drive had been previously sterilized utilizing forensic software. The EnCase software creates "E01" evidence files, which are bitstream copies of all data stored on the hard drive from the first sector to the last. This includes the "Unallocated Clusters" area of the drive. These aforementioned "E01" files can then be examined using EnCase computer forensic software. This process, described above, allowed me to conduct my forensic examination from the copy of the hard drive which I created while preserving the original hard drive in the identical condition that is was in when provided by Mr. Eastman.

The following are the results of my examination:

There were (11) eleven "Skype" user names that had been used on this computer to chat with other people over the Internet. The names of the accounts were: "harry.styles888", "bieber.believe", "harry.styles962", "jenny.finotti", "john.eastman15", "justin.bieber727", "justin.bieber6444", "justin.swag6", "louis.tomlinson85", "niall.horan520", and "sam.albert624". Justin Bieber is a popular singer. Harry Styles, Niall Horan, and Louis Tomlinson are members of the popular singing group "One Direction". Sam Albert is a popular teen figure on the website "YouTube". These user names were located in the directory "C:\Users\John\AppData\Roaming\Skype\".

An Internet search revealed that Justin Bieber's D.O.B. is ████, Harry Styles' D.O.B. is ████, Louis Tomlinson's D.O.B. is ████, Niall Horan's D.O.B. is ████. Sam Albert appears to be a teenager also, but I was unable to locate his D.O.B.

There were remnants of "Skype" chat conversations between the user name "harry.styles888" and the three girls "Skype" user names from Vermont. Although it has been determined there were chat conversations between them, the actual data related to these conversations was in binary code and was unable to be read. I was able to read the user names and the user listed biographical information. The user names and bio information were:

████ - "i snow board, i sing, and i do gymnastics";
████ - "I'm 11 I live in ████ My name is ████ I have 1 brother and 1 sister I have 11 cousins I live with both my parents";
████" - no biological information.

43. FOR FURTHER INVESTIGATION:   ████████

DETECTIVE  ☐   YOUTH ☐   V&I ☐   OTHER: EXPLAIN ☐

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
44. SUPERVISOR APPROVING                              45. DATE
████                                                  5-10-13

ORIGINAL COPY          REV 1-96-CS

DISC-000031

| 42. NARRATIVE: | Complaint Num: 2012-066882 |
| --- | --- |

**DETAILS OF OFFENSE:**  Describe important information as to why or how the incident occurred; physical evidence; include serial numbers of property if available; vehicles used if any; any suspects; etc.

This data was located in the directory "C:\Users\John\AppData\Roaming\Skype\harry.styles888\main.db"

I located several videos saved to the hard drive that depicted webcam videos of the individuals that had "Skype" user names created in their name on this hard drive. There were (2) two videos depicting Justin Bieber, (11) eleven videos depicting members of the music group "One Direction", and (4) four videos depicting Sam Albert. These videos had been captured by a Logitech Webcam that had been connected to the computer and used to record the videos from the computer screen. The videos were saved to the directory "C:\Users\John\Videos\Logitech Webcam\". These are the videos Mr. Eastman would have utilized to give the impression to those he was chatting with that they were chatting with the above mentioned individuals.

The "Skype" program has a function built into it called "Video Snapshot". This function allows the user to take still photo snapshots of the video feed of the person they are chatting with. These photos will consist of a still photo of whatever the person is doing on the webcam when the snapshot is taken. These photos are then saved to a folder on the hard drive to be viewed later. I located hundreds of photos saved to this hard drive that had been taken using this "Skype" program function. The photos were saved to the directory "C:\Users\John\AppData\Roaming\Skype\Pictures\". Of the photos saved to this directory, I located (219) two hundred and nineteen photos that depict child pornography images. These photos depict females appearing to be between 12 and 15 years old in various stages of undress posing in a lascivious manner towards the camera view, posing with their buttocks facing the camera allowing a clear view of their genitalia, posing with their legs spread allowing a clear view to their genitalia, and masturbating themselves. These photos were created by the user being engaged in a video chat conversation with these females using "Skype" and manually taking the snapshots during these conversations.

I located a video saved to the computer that depicted child pornography. The 26 min and 14 sec video depicted a partially nude female appearing to be between 13 and 15 years old on a webcam on a bed. The female poses either with her legs spread apart allowing a clear view to her genitalia, or laying or kneeling with her buttocks facing the camera with a clear view of her genitalia at several different point during the video. The video was captured with a Logitech webcam that had been connected to the computer and used to record the video chat session. There is sound in the video and a male can be heard making sounds that appear to be related to him masturbating while watching the webcam. The sound of keys being typed to chat during the conversation can also be heard. The video was saved in the directory "C:\Users\John\Videos\Logitech Webcam\".

I located (4) four photos of game cards related to a sex game to be played on a webcam. Each card depicted a different level of the game with point values associated with various sex related acts. The cards indicated that a point value was needed to advance through the levels. Each card has six different acts to perform for each level. Some of the acts are as follows: Level 1 - stick out your tongue, blow the camera a kiss, suck on your finger; Level 2 - flash your ass, flash your boobs, flash your pussy; Level 3 - get naked, close up of your ass, close up of your pussy; Level 4 - finger your ass, masturbate for two minutes, orgasm. These photos were saved to the directory "C:\Users\John\Downloads\". This directory is the default location for files to be saved to the hard drive when they are downloaded from the Internet.

| 43. FOR FURTHER INVESTIGATION: | | | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE | |
| --- | --- | --- | --- | --- | --- |
| | | | | 44. SUPERVISOR APPROVING | 45. DATE |
| DETECTIVE ☐ | YOUTH ☐ | V&I ☐ | OTHER: EXPLAIN ☐ | Sgt ___ #492 | 5-10-13 |

42. NARRATIVE:                                                    Complaint Num: 2012-066882

**DETAILS OF OFFENSE:**  Describe important information as to why or how the incident occurred; physical evidence;
include serial numbers of property if available; vehicles used if any; any suspects; etc.

I located over (300) three hundred photos depicting child pornography in the "Unallocated Clusters" are of
the hard drive. The photos depicting nude, or partially clothed, females and males appearing to be between
the ages of 5 and 15 years old engaging in various sex acts with adult males and females, engaging in
various sex acts with other children, posing in manner that exposes their genitalia in clear view of the
camera, and posing in a lascivious manner. Many of these photos appeared to have been saved to the
hard drive through navigating the Internet.

I located Internet history on the hard drive that showed the user had been accessing websites that
contained images depicting child pornography from 2009 to 11/9/12. Some of these websites were:
"www.angelmodel.info", "www.sispics.com", "www.angelmodel.com", "www.gogousenet.com",
"www.nfxs.com", "www.nonude-vip.com", "www.imagevenue.com", "www.underagenude.com",
"www.young-pussy.org", www.goodtalen.com", "www.lilholes.com", "www.hairlesspussy.biz", www.cma-
video.com", "www.honeymod.com", www.bare-family.net", "www.preteensnonenude.com", "www.bikini-
pics.us", "www.lodraw.ru", "www.lo-nn-pics.com", "www.my-fruits.info", and "www.usenetbin.net".

I determined that the program "Skype" was installed on the computer on 7/12/12. It was also determined
that two other video chat programs were installed on the computer. The video chat program "Many Cam"
was installed on the computer on 7/11/12, and the program "ooVoo" was installed on the computer on
10/12/12.

     On 5/6/13, I spoke with ███████ D.O.B. ████ who is Mr. Eastman's sister. Ms. ███ and her 18
year old daughter, ███████, came to the Detective Bureau to speak about Mr. Eastman, and while in
the Detectives Bureau, gave a voluntary sworn statement. Ms. ███ detailed a life of sexual deviance that
Mr. Eastman has led since a very young age. Ms. ███ described Ms. Eastman of exposing himself to
members of his family, family friends, and in public places. She stated that he had been arrested numerous
times for his public indecency offenses as both a juvenile and an adult. Ms. ███ stated that she has a twin
sister, and that Mr. Eastman would walk into the bathroom while they were taking a bath and going to the
bathroom, or would walk into their bedroom while they were changing. She stated that if they were walking
to their bedroom with a towel around them after bathing, he would rip the towel off of them so he could see
them naked. Ms. ███ stated that Mr. Eastman would call their female friends and speak sexual to them
over the phone, and would grab them sexually when they visited the house. She stated that on several
occasions her and her sister would come home from school and find Mr. Eastman in the kitchen talking on
the phone and masturbating. She stated that he would continue even though they had walked into the
house. Ms. ███ stated that while they were growing up Mr. Eastman had shot and killed a kitten with a BB
gun, stuffed their dog's head into their gas oven with the gas on, and blew marijuana smoke into their birds
face and let the bird out of the cage to fly into the wall ad break its beak. Ms. ███ stated that when she
and her sister were in high school, girls in their grade would tell them that Mr. Eastman would call their
houses and talk sexually explicit to them. She stated that while she was in high school her father put Mr.
Eastman into a sex rehab, but her mother signed him out a short time later. Ms. ███ stated that a couple
years after that, Mr. Eastman had been staying at their cousin's house in North Haven. She stated that
their cousin was living with a man who had a nine year old daughter. Ms. ███ stated that one night Mr.
Eastman went into the girl's bedroom while she was sleeping and pulled her underwear down. She stated
that the girl was able to run out of the room. Ms. ███ stated that Mr. Eastman took off to live with family
down in Florida before he could be arrested for that case. She stated that several years later he came back

43. FOR FURTHER INVESTIGATION:                          SUBSCRIBED AND SWORN TO
                                                        BEFORE ME THIS DATE
☐ DETECTIVE   ☐ YOUTH   ☐ V&I   ☐ OTHER: EXPLAIN        44. SUPERVISOR APPROVING           45. DATE
                                                                                            5-10-13

██████ **COPY**                                                                      DISC-000033

42. NARRATIVE:                                                                    Complaint Num: 2012-066882

**DETAILS OF OFFENSE:**   Describe important information as to why or how the incident occurred; physical evidence;
include serial numbers of property if available; vehicles used if any; any suspects; etc.

to CT and was arrested for the case and went to jail. Ms. ▊ stated that while he was in Florida she
knows that Mr. Eastman had been arrested a few times for making sexual phone calls to women down
there. Ms. ▊ stated that after Mr. Eastman got out of jail, he started calling her at work and making
sexually obscene comments. She stated that he would tell her, "My dick is hard. I want you to suck my
dick." She stated that he would call her all the time from blocked numbers so she wouldn't know it was him.
Ms. ▊ stated that her father died about nine years ago, and she and her sister went to their father's
house to clean it up. She stated that it was clear somebody had been there and took some things. She
stated that they noticed her sister's prom picture on the coffee table in front of the TV, and a porn video in
the machine. Ms. ▊ stated that their mother confronted Mr. Eastman and it was determined that he had
been masturbating to her sister's picture while watching the porn. Ms. ▊ stated that she has kept a very
close eye on her daughter growing up because she never wanted Mr. Eastman anywhere near her for fear
he would do something to her. She stated that this year her daughter started college, and while away at
college, Mr. Eastman started sending her messages on Facebook trying to get her to talk to him. Ms. ▊
stated that does not know of any relationship that Mr. Eastman has ever had outside of a girlfriend he had
for a brief time in middle school. Ms. ▊ stated that she knows that Mr. Eastman has taken off from
Waterbury to live with a relative ▊ ▊ in ▊ and is living there now.
   A State Police Records Check (SPRC) showed that Mr. Eastman is a convicted felon having been
convicted in CT for Sexual Assault in the 4th degree and Risk of Injury to Minor due to Illegal Sexual
Contact with a Minor in 1998 in which he pulled the underwear of a nine year old girl down while she was
sleeping in her bed, Harassment in the First Degree in 1999, and Risk of Injury to a Minor in 2008 in which
he grabbed the arm of a 15 year old girl as she walked past him. Mr. Eastman was also convicted in CT for
sexually deviant behaviors as Public Indecency in 1986 and1989.
   On 5/6/13, I determined that Mr. Eastman's 1999 conviction was the result of an arrest in Meriden. This
affiant contacted the Meriden Police Department and found that the victim in the case was Ms.
▊ D.O.B. ▊. It was determined that due to the age of the case, the department did not have
the reports on file at this time.
   On 5/6/13, I was able to contact Ms. ▊ by phone and speak to her about the case. She was
very reluctant to speak about it, but provided some details. She stated that she had been working at a bank
that Mr. Eastman was a customer at, and a restaurant that Mr. Eastman would frequent. Ms. ▊
stated that Mr. Eastman would slip sexually explicit notes to her as she worked at the teller window at the
bank. She stated that one night she got a call at her home from Mr. Eastman. Ms. ▊ stated that
she had no idea how he got her phone number because she never gave it to him. She stated that he
started speaking sexually obscene to her. She stated that her boyfriend was her house at the time and he
took the phone. Ms. ▊ stated that Mr. Eastman told her boyfriend his name and about the sexual
things he was going to do to her. Ms. ▊ stated that her boyfriend hung up. She stated a little while
later Mr. Eastman called back and was saying the sexual things again. She stated that they hung up and
called the police. Ms. ▊ stated that she didn't even know that Mr. Eastman had been arrested for
that case, and that he had never contacted her again.
   Mr. Eastman was placed on Probation several times for his various convictions. Mr. Eastman was
convicted of Violation of Probation three times.
   Mr. Eastman was placed on the Connecticut Sex Offender Registry in 1999 for ten years. He was
removed from the registry in 2009.
   An Interstate Identification Index (III) check determined that Mr. Eastman also has several convictions in
Florida. He was convicted twice of Making Obscene or Harassing Phone Calls in 1993. In the second case,

| 43. FOR FURTHER INVESTIGATION: | | | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE | |
|---|---|---|---|---|---|
| DETECTIVE | YOUTH | V&I | OTHER: EXPLAIN | 44. SUPERVISOR APPROVING | 45. DATE |
| ☐ | ☐ | ☐ | ☐ | | 5-10-13 |

COPY

DISC-000034

42. NARRATIVE:                                                                    Complaint Num: 2012-066882

**DETAILS OF OFFENSE:**   Describe important information as to why or how the incident occurred; physical evidence;
include serial numbers of property if available; vehicles used if any; any suspects; etc.

he was also convicted of Violating Probation. Mr. Eastman was convicted of Violating Probation in other
cases also.

  Mr. Eastman never contacted me after he left the police department on 11/10/12. He never requested
that his computer be returned, or that a search of the computer be discontinued.

  I applied for an arrest warrant for Mr. Eastman for Employing a Minor in an Obscene Performance,
Promoting a Minor in an Obscene Performance, Use of a Computer to Entice a Minor to Engage in Sexual
Activity, Misrepresentation of Age to Entice a Minor, Possession of Child Pornography in the First Degree,
and Injury or Risk of Injury to, or Impairing Morals of Children.

  A CD containing my computer forensic examination results, the Rights Card signed by Mr. Eastman, the
WPD Voluntary Statement Rights Form signed by Mr. Eastman, the WPD Consent to Search Form signed
by Mr. Eastman, the IP address information provided by Comcast Cable, and the HP desktop computer
computer provided by Mr. Eastman were entered as evidence.

  This case is closed.

                        Det. Petter/Jr #532

| 43. FOR FURTHER INVESTIGATION: | | | | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE | |
| --- | --- | --- | --- | --- | --- |
| DETECTIVE | YOUTH | V&I | OTHER: EXPLAIN | 44. SUPERVISOR APPROVING | 45. DATE |
| ☐ | ☐ | ☐ | ☐ | Sgt. 492 | 5-10-13 |

ORIGINAL **COPY**                    REV. 04-05

DISC-000035

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No.  3:16-cr-006(MPS) |
| v. | : | |
| | : | |
| JOHN EASTMAN | : | March 28, 2016 |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS**

The Government respectfully submits this memorandum in opposition to the defendant John Eastman's motion to suppress physical evidence and statements ("Def.'s Mot.") and his accompanying memorandum of law ("Def.'s Mem.").  Docs. 30 and 31.  On November 10, 2012, two detectives from the Waterbury Police Department went to the defendant's apartment to investigate a complaint that a Skype user, utilizing an internet account associated with the defendant's residence, had engaged in sexually explicit webcam conversations with a minor in Vermont. The defendant invited the detectives into the apartment, showed them the computer in his bedroom, and verbally consented to let the detectives take the computer to be forensically examined.  At no point did the detectives search the apartment, take any other items from the apartment, or place the defendant in handcuffs.  The defendant also agreed to go with the detectives to the police station to discuss the investigation.  At the police station, the defendant was advised of his rights, signed a waiver of his rights, provided a signed sworn statement, and signed a consent to search form memorializing his prior verbal consent to search his computer. A government forensic document examiner has confirmed that the defendant's signature on those forms match other documents with his signature.  Again, at no point was he in handcuffs.

Accordingly, there have been no Constitutional violations, and the Court should deny the defendant's motion to suppress.

Even if the Court finds that the Waterbury detectives somehow violated the defendant's Constitutional rights, the computer evidence should not be suppressed because federal law enforcement agents separately obtained a federal warrant to search the defendant's computer, and acted in good faith when they executed the warrant and forensically examined his computer.

Therefore, the defendant's motion should be denied.

## I.    FACTUAL BACKGROUND

### A.    The Nature of the Investigation and Charges

On January 7, 2016, a federal grand jury returned a two-count indictment charging the defendant with one count of coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  Doc. 28 (Indictment).  The indictment alleges that between June and November 2012, the defendant engaged in video chats with minors over the internet using online video chatting services such as Skype.  Indictment ¶¶ 2, 5.  During these video chats, he enticed the minors to engage in sexually explicit conduct, which he then recorded and/or photographed and then saved on his computer.  *Id.*  In order to deceive and entice the minors, the defendant posed as famous singers and musicians that are popular to teenagers.  *Id.*

The charges stem from an investigation that originally began in Vermont in September 2012 when Trooper Eric Jollymore of the Vermont State Police received a complaint from the mother of an eleven year old girl about an incident that occurred when her daughter and her daughter's friends were using Skype during a sleepover.  Decl. of Detective Peter Morgan, dated March 25, 2016, ¶ 3, attached hereto as Ex. A ("Morgan Decl."); Doc. 1-1 (Criminal Complaint Affidavit ("Compl. Aff.")) ¶ 12.  Trooper Jollymore then spoke with the eleven year old girl,

who indicated that she and her friends were using the Skype program to speak with people over the internet, including an individual on Skype using the username "Harry.Styles888." Morgan Decl. ¶ 3; Compl. Aff. ¶ 13. Harry Styles is a member of the musical group "One Direction" that is popular with teenagers. Morgan Decl. ¶ 3; Compl. Aff. ¶ 13. During the Skype conversation, "Harry.Styles888" asked the girls to activate the web cam so that he could see them. Morgan Decl. ¶ 3; Compl. Aff. ¶ 13. The girl told "Harry.Styles888" that the girls were thirteen years old. Morgan Decl. ¶ 3; Compl. Aff. ¶ 13. After the girl activated the web cam on her computer, "Harry.Styles888" asked the girls if they could pose in the sexual position called "Doggy Style" in front of the web cam for him. Morgan Decl. ¶ 3; Compl. Aff. ¶ 13. The girl stated that they did not perform the act, and the conversation ended shortly thereafter. Morgan Decl. ¶ 3; Compl. Aff. ¶ 13.

Through a court order, Skype disclosed that the "Harry.Styles888" account was activated on July 27, 2012 from a specific internet protocol address, which Trooper Jollymore subsequently determined was assigned to Comcast Cable to a subscriber in Waterbury, Connecticut. Morgan Decl. ¶ 4; Compl. Aff. ¶ 14. Trooper Jollymore then referred the matter to the Waterbury Police Department for further investigation. Morgan Decl. ¶ 4; Compl. Aff. ¶ 15.

The case was assigned to Detective Peter Morgan of the Waterbury Police Department's Computer Crimes Unit. Morgan Decl. ¶¶ 2, 4; Compl. Aff. ¶ 16. Detective Morgan has been a member of the Waterbury Police Department since 1995. Morgan Decl. ¶ 2. He started as a police officer and then became a detective in 2004. *Id*. He is also a computer forensic examiner. *Id*.

Detective Morgan reviewed the Vermont complaint and then obtained an order from Connecticut Superior Court requiring Comcast to disclose the subscriber information associated

3

with the internet protocol address disclosed by Skype. Morgan Decl. ¶¶ 3, 5; Compl. Aff. ¶ 16. On November 8, 2012, Comcast reported that the internet protocol address provided by Skype was assigned to the account of John Eastman with an address in Waterbury, Connecticut. Morgan Decl. ¶ 6; Compl. Aff. ¶ 16.

**B.    The Events of November 10, 2012**

During the evening of Saturday, November 10, 2012, Detective Morgan and another member of the Waterbury Police Department, Detective David Terni,[1] drove to the defendant's apartment to try and speak with him about the complaint from Vermont. Morgan Decl. ¶ 7; Compl. Aff. ¶ 17. Detective Terni has been a member of the Waterbury Police Department for several years.  Morgan Decl. ¶ 7.  Detective Morgan did not obtain a search warrant at the time because he felt he needed additional information first.  *Id*. ¶ 8.  The detectives arrived at the defendant's residence sometime between 6:00 and 6:30pm. *Id*. ¶ 9. Upon arrival, the detectives knocked on the door. *Id*. ¶ 10. The defendant answered the door, and Detective Morgan identified himself and Detective Terni to the defendant.  *Id*.  Although they were dressed in plain clothes, Detective Morgan showed Eastman his police shield and stated he was with the Computer Crimes Unit of the Waterbury Police Department.  *Id*.  Detective Terni was wearing his police shield around his neck and was visible.  *Id*.

The defendant invited the two detectives into the apartment.  *Id*. ¶ 11. Detective Morgan informed the defendant that he was not under arrest and that he was conducting an investigation regarding his internet activity.  *Id*. The defendant stated he wished to cooperate.  *Id*.  The defendant sat down on the couch in the living room.  *Id*. The defendant was never placed in handcuffs during the time the detectives were at the residence.  *Id*.

---

[1] The government expects to call Detective Terni to testify at the suppression hearing.  Detective Morgan is unavailable due to a prior family obligation in Atlanta, Georgia on the days the hearing is scheduled.

At one point, the defendant's mother came out from a bedroom and asked what was happening. *Id*. ¶ 12. Detective Morgan explained they were from the police department and were investigating the defendant's internet activity. *Id*.  The defendant told his mother to go back inside her room and that everything was okay. *Id*.  His mother then went inside her room and closed the door. *Id*.

Detective Morgan asked the defendant about a laptop computer he could see in plain view. *Id*. ¶ 13. The defendant stated he did not use that laptop. *Id*. He then stated he had a desktop computer in his bedroom that he uses, and he led the detectives into his bedroom. *Id*. The detectives followed the defendant into the bedroom where they observed the desktop computer and a webcam. *Id*. Detective Morgan asked the defendant if they could take the desktop computer to the police station to be examined. *Id*.  The defendant verbally agreed. *Id*. The detectives did not ask to take the other laptop computer because the defendant indicated he did not use that computer.  *Id*.

The detectives also asked the defendant if he would be willing to come to the Waterbury Police Department to speak about the case, and the defendant agreed to do so. *Id*. ¶ 14.  Prior to leaving, the defendant used the bathroom, and he closed the door as he was using the bathroom. *Id*. ¶ 15.  Also, before leaving, the defendant knocked on the door to his mother's bedroom to let her know where he was going. *Id*.  Eastman's mother inquired as to whether her son was under arrest and Detective Morgan responded no. *Id*.

The total time the detectives spent in the defendant's apartment was less than half an hour. *Id*. ¶ 17. The detectives did not enter any other room, other than the living room and the defendant's bedroom, which the defendant invited them into.  *Id*.  They did not enter the kitchen or the mother's bedroom, they did not search the apartment, and they did not take any items

except for the desktop computer that the defendant verbally agreed to let them take. *Id.* The defendant was calm and cooperative throughout the period the detectives were at his residence, and neither the defendant nor his mother ever asked the detectives to leave the apartment. *Id.*

The detectives then drove the defendant to the police station. *Id.* ¶ 16. He sat in the back seat of the car and was not in handcuffs during the drive. *Id.* At the police station, Detective Morgan sat at a desk in an open area next to a computer, and the defendant sat next to him. *Id.* ¶ 18. Detective Terni was across from them. *Id.* The defendant was not in handcuffs during the interview.[2] *Id.*

Before interviewing the defendant, Detective Morgan provided the defendant with an "Advisement of Rights" form and read out loud each of the Constitutional rights contained on the form. *Id.* ¶ 19; *id.* Ex. A-1. The defendant initialed each of the rights contained on the form and agreed to waive those rights. *Id.* ¶ 19; *id.* Ex. A-1. The defendant signed the form, and Detective Morgan also signed the form and noted the date and time, which was November 10, 2012 at 6:55 p.m. *Id.* ¶ 19; *id.* Ex. A-1. Detective Terni was also present at the time and observed. *Id.* ¶ 25.

Detective Morgan then interviewed the defendant, and the defendant described his use of Skype to interact with minors. *Id.* ¶ 20. After the interview, Detective Morgan started a computer program on the computer at the desk in order to type the defendant's statement into a "Voluntary Statement" form. *Id.* Upon starting the program, the program generates a "Voluntary Statement Rights Form" which, like the Advisement of Rights, lists an individual's Constitutional rights. *Id.* Detective Morgan provided the form to the defendant. *Id.* The defendant placed his initials next to each right and then signed the form agreeing that he understood and wished to waive

---

[2] There is no video recording of the interview because prior to 2014, the Waterbury Police Department was not equipped with video recording devices to record interviews. Morgan Decl. ¶ 18.

those rights.  *Id*. ¶ 20; *id.* Ex. A-2.  Detective Morgan also signed the form and noted the date

and time, which was November 10, 2012 at 7:32 p.m.  *Id*. ¶ 20; *id.* Ex. A-2.  Again, Detective

Terni was also present at the time and observed. *Id*. ¶ 25.

   Detective Morgan then finished typing the defendant's statements into the Voluntary

Statement form, printed the form, and then handed it to the defendant.  *Id*. ¶ 21. Detective

Morgan asked the defendant to read portions of the statement out loud to make sure he could

read the form. *Id*.  After reviewing the statements on the form, the defendant asked for a change

to one of his statements.  *Id*.  Detective Morgan made the change, reprinted the form, and

provided it to the defendant.  *Id*.  The statement provides, in part, as follows:

> I use the Internet to chat with girls on different web sites. I use the program Skype
> to chat with girls because you can use the web cam to video chat and see them
> while chatting. I am sexually attracted to very petite girls. I like girls that are like
> 14 years old and have started to develop. Because of this, I made a couple of
> screen names on Skype that were the names of members of the singing group One
> Direction. I used their names because I know the names would attract teenage
> girls to contact me. One of the screen names I used is "harry.styles888." I also
> have an email address "stylesharry446@gmail.com." I log on to Skype with the
> screen name and just wait for girls to contact me. When a girl contacts me, I start
> chatting with them. If they want to see me on the web cam, I will have a You
> Tube video of the singer from some old video footage ready to play and then
> point my web cam at the computer screen so the girl thinks that she is talking to
> the real singer. I will then try talking to the girl in a sexual manner to see if she
> will talk back. I will ask if the girl will pose in the sexual position doggy style
> with their ass facing the camera. I ask them to do this because I think it is the best
> pose to see a girl. My hope is that the girl will show me herself on camera and
> then pose in a sexual manner, or perform some kind of sex act for me to see. I
> know that I have chatted with some girls that were between like 12 and 15 years
> old, we chatted about sex and they posed in a sexual manner or performed a sex
> act so I could watch on the web cam.  Anytime that I can get the girls to perform
> any sex acts, I will masturbate until I ejaculate. . . . I also go to other porn sites
> called Motherless.com and Jailbait.

*Id*. Ex. A-3.

   Before asking the defendant to sign the statement, internal procedures require the

detectives to call a supervisor to observe and notarize the defendant's signature.  *Id*. ¶ 22.  In

7

accordance with those procedures, the detectives called Lieutenant William Fox to observe and notarize while the defendant initialed and signed the Voluntary Sworn Statement.[3] *Id.* ¶ 23.  In the presence of Lieutenant Fox, Detective Morgan, and Detective Terni, the defendant initialed and signed the Voluntary Statement on each page.  *Id.*  Lieutenant Fox then signed the form on each page.  *Id.*  Finally, Detective Terni signed the form on each page as a witness.  *Id.*

Detective Morgan also asked the defendant to sign a Consent to Search form to memorialize the verbal consent he previously gave the detectives to search his desktop computer. *Id.* ¶ 24; *id.* Ex. A-4.  The defendant signed the form. *Id.* ¶ 24; *id.* Ex. A-4. Detective Morgan also signed the form and noted the date and time, which was November 10, 2012 at 7:40 p.m. *Id.* ¶ 24; *id.* Ex. A-4.  Like before, Detective Terni was present at the time and observed.  *Id.* ¶ 25.

The detectives did not arrest the defendant following the interview, as Detective Morgan wanted to perform a forensic examination of the defendant's computer to see if evidence from the computer corroborated his statements.  *Id.* ¶ 26.  The two detectives drove the defendant back to his residence. *Id.* ¶ 27.  The defendant sat in the back seat of the car and he was not placed in handcuffs during the drive.  *Id.*  Upon arrival at his residence, the defendant got out of the car, and the detectives drove away.  *Id.*

C.      The Forensic Examination of the Defendant's Computer

After the interview, Detective Morgan began forensically examining the defendant's computer. Def.'s Mot. Ex. D at DISC-000030. Through his forensic examination he found the Skype program on the computer, along with several Skype usernames that were used to communicate with other people.  *Id.* at DISC-000031. The names of some of the Skype accounts were:  bieber.believe,  harry.styles888,  harry.styles962,  john.eastman.15,  justin.bieber727,

---

[3] Lieutenant Fox has since been promoted and is currently a Captain at the Waterbury Police Department.  The government expects Captain Fox to testify at the suppression hearing.

justin.bieber6444, justin.swag6, louis.tomlinson85, niall.horan520, and sam.albert624. *Id*. Justin Bieber is a singer who is popular with teenagers. *Id*. Harry Styles, Niall Horan, and Louis Tomlinson are members of the singing group "One Direction" that is popular with teenagers. *Id*. Sam Albert is a popular teen figure on the website YouTube. *Id*. Detective Morgan also found several videos that were saved to the hard drive that depicted webcam videos of the individual singers and band members listed above, which was consistent with the defendant's signed statement when he admitted "I will have a You Tube video of the singer from some old video footage ready to play and then point my web cam at the computer screen so the girl thinks that she is talking to the real singer." *Id.* at DISC-000032.

In addition, Detective Morgan located photos that were taken using Skype's "Video Snapshot" function, which allows a Skype user to take still photos of the person they are communicating with during a Skype video call. *Id.* Photos taken with the "Video Snapshot" function depict a still image of whatever the other person is doing on the video call when the snapshot is taken. *Id.* Several of them depict child pornography in that they depict minor females in various stages of undress and posing in a lascivious manner, with their exposed buttocks facing the camera allowing a clear view of their genitalia, consistent with the defendant's signed statement in which he stated "I will ask if the girl will pose in the sexual position doggy style with their ass facing the camera. I ask them to do this because I think it is the best pose to see a girl." *Id*.

Detective Morgan also recovered hundreds of images of child pornography from unallocated space from the defendant's computer, meaning the defendant had deleted the images prior to his computer being examined. *Id.* at DISC-000033. His web browsing history showed he repeatedly accessed websites with names indicative of child pornography. *Id*. Finally, there was

9

also evidence on the computer that the Skype account "harry.styles888" had been used to communicate with the minor girls from Vermont.  *Id.* at DISC-000031.

**D.     The Defendant's State Charges**

Based on the evidence he gathered to date, Detective Morgan obtained an arrest warrant charging the defendant in Connecticut Superior Court with Employing a Minor in an Obscene Performance, Promoting a Minor in an Obscene Performance, and Use of a Computer to Entice a Minor to Engage in Sexual Activity, Misrepresentation of Age to Entice a Minor, Possession of Child Pornography, and Risk of Injury to a Minor.  *Id.* at DISC-000035. The defendant, however, was no longer living in Connecticut.  Def.'s Mem. at 3. He had taken off to live with a relative in Virginia.  *Id.*

The defendant was eventually apprehended in Virginia.  Ex. D (Waiver of Extradition). On May 15, 2013, he waived extradition, and on May 29, 2013, he was transported to Connecticut, where he was formally arrested on the Connecticut state charges listed above.  Ex. D (Waiver of Extradition); Ex. E (Uniform Arrest Report).

**E.     The Federal Investigation**

In approximately February 2014, the state authorities contacted federal law enforcement to see if the case could be charged federally.  Decl. of Special Agent Allison M. Haimila, dated March 28, 2016, ¶ 2, attached hereto as Ex. B ("Haimila Decl.").  Special Agent Allison Haimila with the Department of Homeland Security, Homeland Security Investigations ("HSI") was the lead federal case agent assigned to the case.[4] *Id.* ¶¶ 1, 2.  She obtained and reviewed copies of Detective Morgan's reports and the results of his forensic examination.  *Id.* ¶ 2; Compl. Aff. ¶ 20.  She also applied for, obtained, and executed search warrants for several of the email

---

[4] The government expects Special Agent Haimila to testify at the suppression hearing.

accounts associated with the Skype accounts found on the defendant's computer.  Haimila Decl. ¶ 3.  Based on her investigation, Agent Haimila determined that the photos and videos saved from the Skype calls were of approximately five different minor victims and depicted child pornography.  *Id.* ¶ 4; Compl. Aff. ¶ 20. On February 20, 2015, the defendant was arrested pursuant to a federal criminal complaint charging him with coercion and enticement of a minor and possession of child pornography.  Docs. 1, 6.

Subsequently, on July 28, 2015, Agent Haimila applied for and obtained a search warrant to forensically examine a mirror image of the defendant's computer.  Haimila Decl. ¶ 6; *United States v. Mirror image of 500 gigabyte Hitachi computer hard drive, bearing serial number JP1572FL0375ZK*, No. 3:15-mj-152 (JGM) (D. Conn.). The basis for the warrant was that computer forensic examiners at HSI had access to additional computer forensic analysis tools that Detective Morgan did not have access to.  Haimila Decl. ¶ 6.  Based on the warrant, computer forensic examiners at HSI performed additional computer forensics on the computer image and recovered the evidence that Detective Morgan recovered, as well as Skype chat messages between the Skype accounts on the defendant's computer and dozens of minor victims.  Haimila Decl. ¶ 6.  Several of the chats correspond to the date and time some of the still images depicting child pornography were taken using the Skype Video Snapshot function.  *Id.* Through Facebook and other social media applications, law enforcement was able to identity two of the minors: one resides in Seattle and was 16 years old at the time of the offense, and the other resides in Florida and was approximately 12 years old at the time of the offense.  *Id.* ¶ 7.

Based on the evidence, on January 7, 2016, a federal grand jury returned the indictment in this case charging the defendant with coercion and enticement of a minor and possession of child pornography.

### F.    The Defendant's Motion to Suppress

On January 22, 2016—nearly three years after the defendant was apprehended in Virginia and arrested in Connecticut Superior Court—the defendant filed the instant motion to suppress. Although Agent Haimila utilized the results of Detective Morgan's forensic examination and the defendant's statements to the Waterbury detectives in her application for a federal search warrant to forensically examine a mirror image of his computer, Agent Haimila was not aware that the defendant was contesting the validity of the Consent to Search form, the Advisement of Rights form, the Voluntary Statement Rights form, or the Voluntary Statement form. Agent Haimila had no reason to believe that he had not provided consent to search his computer or that he had not voluntarily made the statements contained in the Voluntary Statement. *Id*. ¶ 8. In addition, according to Agent Haimila and Detective Morgan, the defendant never made a request to have his computer returned to him. *Id.*; Morgan Decl. ¶ 28.

### G.    The Government's Handwriting Analysis

After the defendant filed his motion to suppress in which he claims the signatures on the forms discussed above are not his, the government utilized the services of a forensic document examiner, Joan DiMartino, who is employed by HSI.[5] Ex. C (Report and CV of Joan DiMartino). She compared the signature on the original disputed forms (Consent to Search, Advisement of Rights, Voluntary Statement Rights, and Voluntary Statement) to other original documents that the government asserts bear Eastman's signature, including his Waiver of Extradition, which he signed before a judge in Norfolk, Virginia on May 15, 2013, and his Uniform Arrest Report in Connecticut, his Booking Card, and a Waterbury questionnaire, all of which he signed on May 29, 2013 after he was brought back to Waterbury and which are signed

---

[5] The government expects HSI forensic document examiner to testify at the suppression hearing.

by officers other than Detectives Morgan and Terni. *Id.*; Exs. D, E, F, G. After performing a comparative and microscopic handwriting examination, she determined that the writer of John Eastman's signature on the Consent to Search form is the same as the writer of John Eastman's signature on the other documents.  Ex. C.

### H.    The Defendant's Criminal History

The defendant has an extensive criminal history.  Def.'s Mot. Ex. D. at DISC-000034 to DISC-000035.  In 1998, he was convicted in Connecticut state court in 1998 for fourth degree sexual assault and risk of injury to a minor.  *Id.*  In that case, the defendant had pulled down the underwear of a nine-year old girl while she was sleeping. *Id.* The defendant was placed on the Connecticut Sex Offender Registry for ten years, and was removed from the registry in 2009. *Id.*

In 1999, the defendant was convicted of first degree harassment for making obscene telephone calls and giving obscene notes to an adult woman who worked at his bank. *Id.*  In 2008, the defendant was again convicted of risk of injury to a minor for grabbing the arm of a 15 year old female as she walked past him.  *Id.*  The defendant also has three convictions in Connecticut for violating probation.  *Id.*

Prior to 1998, the defendant had several convictions in Florida including making obscene telephone calls. *Id.*  In addition, the defendant's sister states that the defendant repeatedly sexually harassed her and her sister, that he often exposed himself and masturbated in public, and that he would call up girls in his sisters' classes and talk in a sexually explicit manner to them and sexually grab them when they visited the house.  *Id.* at Disc-000033 to DISC-000034.  The sister stated that at one point their father put the defendant into a sex rehab program, but their mother signed him out a short time later.  *Id.*  According to the sister, the defendant also shot a cat with a BB gun, and stuffed their dog's head into a gas oven with the gas on.  *Id.*

A-120

## II.   ARGUMENT

### A.   The Court Should Deny the Motion to Suppress the Physical Evidence

#### 1.   The defendant consented to the search of his computer.

A warrantless search or seizure without probable cause does not violate the Fourth Amendment if, like here, "the authorities have obtained the voluntary consent of a person authorized to grant such consent." *United States v. Elliott*, 50 F.3d 180, 185 (2d Cir. 1995). Voluntary consent "need not be expressed in any particular form[.]" *United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir. 1993). "[I]t is well settled that consent may be inferred from an individual's words, gestures, or conduct. Thus a search may be lawful even if the person giving consent does not recite the talismanic phrase: 'You have my permission to search.'" *United States v. Buettner-Janusch*, 646 F.2d 759, 764 (2d Cir. 1981).

In determining whether consent is voluntary, courts look to the totality of circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir. 1993). A number of factors are relevant to the voluntariness of a consent to search, including age, education, background, physical and mental condition, the setting in which the consent is obtained, and the defendant's prior interactions with law enforcement. *See Schneckloth*, 412 U.S. at 226; *United States v. Calvente*, 722 F.2d 1019, 1023 (2d Cir. 1983) (consent voluntary where 40-year-old defendant was calm, conversation with police was conversational in tone, and defendant had prior convictions and was "thus no newcomer to the law"). Significantly, a defendant's knowledge of the right to refuse consent is not a requirement to a finding of voluntariness. *See Schneckloth*, 412 U.S. at 231-33.

Here, the Court should deny the defendant's motion to suppress the computer evidence because, contrary to the defendant's contentions, law enforcement did not conduct a search of his residence. Rather, the defendant invited the detectives into his apartment, showed the detectives

14