# 17-3893-cr

## United States Court of Appeals

*for the*

## Second Circuit

⸻ ◆ ⸻

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

JOHN EASTMAN,

*Defendant-Appellant.*

───────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF AND SPECIAL APPENDIX
## FOR DEFENDANT-APPELLANT

DAVID A. MORAGHAN
SMITH KEEFE MORAGHAN
& WATERFALL, LLC
*Attorneys for Defendant-Appellant*
257 Main Street, Fl. 2-2
Torrington, Connecticut 06790
(860) 482-7651

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………ii

JURISDICTIONAL STATEMENT……………………………………………1

STATEMENT OF ISSUES PRESENTED FOR REVIEW…………………….2

STATEMENT OF CASE………………………………………………………2

STATEMENT OF FACTS…………………………………………………....3

ARGUMENT………………………………………………………………..17

   1. STANDARD OF REVIEW……………………………………………..17

   2. DISTRICT COURT ERRED IN IT'S DECISION DENYING THE
      DEFENDANT'S MOTION TO SURPRESS…………………………..18

   3. CONSENT…………………………………………………………22

CONCLUSION………………………………………………………………..26

CERTIFICATE PER FED R. APP. P. 32 (a)(7)(C)…………………………...27

# **TABLE OF AUTHORITIES**

UNITED STATES SUPREME COURT CASES:          PAGES

Coolidge v. New Hampshire, 403 U.S. 443 (1971)......................................19

Georgia v. Randolph, 547 U.S. 103 (2006)………………..…….…….…...21

Herring v. United States, 575 U.S. 135 (2009)……………………......….23

Johnson v. United States, 333 U.S. 10 (1948)…………………….……….20

Kentucky v. King, 563 U.S. 452 (2011)……………………….……..…19

Miller v. United States, 357 U.S. 301 (1958)…………………....…….20

Mincy v. Arizona, 437 U.S. 389 (1978)…………………………….…….19

United States v. Crews, 445 U.S. 463 (1980)…………………..…….20,21


FEDERAL CASES:

United States v. Bershychonsky, 778 F.3d 102 (2d Cir. 2015)…………….18

United States v. Freeman, 735 F.3d 92 (2d Cir. 2013)……………….…..17

United States v. Hack, 884 F. 3d 400 (2d Cir. 2018)…………...……..17

United States v. Isiofia, 370 F. 3d 226 (2d Cir. 2004)…………...……19,24

United States v. Lucky, 565 F. 3d 101 (2d Cir. 2009)……………...…17,19

United States v. Moran Vargas, 376 F. 3d 112 (2d Cir. 2004)……………..18

United States v. Snype, 441 F. 3d 119 (2d Cir. 2006)…………...……….22

United States v. Vazquez, 638 F. 2d 507 (2d Cir. 1980)……………………19

United States v. Gonzalez Athehorta, 729 F. Supp. 248 (E.D.N.Y. 1990)....20

United States v. Herron, 18 F. Supp 3d 214 (E.D.N.Y. 2014)……....……....18

United States v. Jacobson, 4 F.Supp. 3d 515 (E.D.N.Y. 2014)……..……...23

FEDERAL STATUTES:

18 U.S.C. § 3231…………………………………………………………….1

18 U.S.C. § 1291…………………………………………………………….1

18 U.S.C. § 3557…………………………………………………………….1

18 U.S.C. § 3742…………………………………………………………….1

18 U.S.C. § 2422(b)…………………………………………………….…..1,2

18 U.S.C. § 2252 A(a)(5)(B)………………………………………………..2

18 U.S.C. § 2253……………………………………………………………2

CONNECTICUT GENERAL STATUTES:

353a-167c…………………………………………………………………8

# JURISDICTIONAL STATEMENT

This Appeal is based upon a conviction and sentencing arising out of the District of Connecticut Federal Court. The Second Circuit Court of Appeals has jurisdiction over this matter based 18 U.S.C.§3231. Further, jurisdiction for this Court is found at 18 U.S.C.§1291 (appeals from final judgements of district court), and rule 4(b), Fed. R. App. Proc. (appeals from criminal convictions), as well as 18 U.S.C.§3557 and 18 U.S.C.§3742 (appeals from sentences).

The defendant entered a conditional plea of guilty to Count 1 of the indictment charging him with Use of an Interstate Facility to Persuade a Minor to Engage in Unlawful Sexual Activity, in violation of 18 U.S.C.§2422(b). Pursuant to Fed. R. Crim. P. 11(a)(2), the defendant, in his plea agreement, expressly reserved his right to appeal the district court's August 15th, 2016 Ruling (Doc. No. 72), which denied his motion to suppress all physical evidence seized from his apartment and his personal computer, as well as certain statements he allegedly made to law enforcement officers.

The defendant was sentenced on November 30th, 2017. The defendant filed his Notice of Appeal on December 1st, 2017 pursuant to Fed. R. App. P. 4. This is an appeal of a denial of the defendant's motion to suppress which entered on August 15th, 2016. The Defendant was sentenced on November 30th to a term of imprisonment of two hundred and four (204) months, with credit for time served, a

1

term of supervised release for life, and various mandatory and standard conditions of supervised release. (Doc. No. 142)

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

John Eastman appeals from his conditional plea of guilty, conviction and sentencing on the following grounds:

1. The trial court erred in its denial of the defendant's motion to suppress, finding that the defendant consented to police officers entering his apartment, and further consented to the police seizing and removing his computer, all done without a search warrant.

## STATEMENT OF THE CASE

The United States Government charged Mr. Eastman by way of a criminal complaint dated February 12th, 2015 with persuading, inducing, coercing and enticing a minor to engage in unlawful sexual activity, and attempting to do the same, in violation of 18 U.S.C.§2422(b), and possession of child pornography in violation of 18 U.S.C.§2252A(a)(5)(B).[1] On January 7th, 2016, an indictment issued charging the defendant with a violation of 18 U.S.C.§2422(b) (coercion and enticement); 18 U.S.C.§2252(A)(a)(5)(B)(possession of child pornography); and 18 U.S.C.§2253 (forfeiture allegation).

---

[1] Mr. Eastman was originally charged by the State of Connecticut and detained on child pornography charges on May 30, 2013. The case was brought by Federal Authorities on February 12, 2015.

2

On January 22nd, 2016, Mr. Eastman filed a motion to suppress physical evidence and statement and a memorandum in support thereof (Doc. Nos. 30 and 31). A hearing was held on the defendant Eastman's motion to suppress on March 31st, 2016. The Trial Court (Michael P. Shea, USDJ) entered a ruling denying the motion to suppress on August 15th, 2016 (Doc. No. 72). On March 2nd, 2017 a plea agreement was reached between John Eastman and the Government (Doc. No. 101), whereby Mr. Eastman reserved his right to appeal the Trial Court's finding and rulings set forth in the August 15th, 2016 ruling on the motion to suppress. (Doc. No. 112 @ 13-14).

Mr. Eastman was sentenced on November 28th, 2017, with the judgment entered on November 30th, 2017. Mr. Eastman was sentenced to a total of two hundred and four (204) months incarceration, with credit for time served; supervised release for a total term of life; and a special assessment of one hundred dollars ($100.00). (Doc. No. 142).

The notice of appeal was filed on December 1st, 2017. (Doc. No. 143).

## STATEMENT OF FACTS

In October of 2012, Waterbury Police Detective Peter Morgan received a telephone call from Trooper Jollymore of the Vermont State Police. The complaint alleged in Vermont centered around a mother who complained to the Vermont State Police that her eleven (11) year old daughter had recently had a

3

sleepover at their residence, with three of her daughter's friends, and that during the time of that sleepover, the daughter and the friends were using the daughter's laptop computer to communicate with others using Skype video and instant messaging software. Tr. at 13. During that time, they communicated with an individual with a username of Harry.Style888. Tr. at 13.[2] During the instant messaging conversations, the individual with username Harry.Style888 requested that the girls pose in front of the camera in sexual position(s). Tr. at 14.

Jollymore applied for and was granted a Court Order for Skype to provide the account activation information for the username Harry.Styles888. The Internet Provider provided a IP address from which the Harry.Styles888 account was created and the date and time the account was created. Trooper Jollymore found that the IP address belonged to Comcast Cable and was issued to a subscriber in Waterbury, Connecticut. Tr. at 15. After he received the requested information, Jollymore contacted Waterbury Detective Morgan, and subsequently sent his investigative notes to Morgan to assist Morgan in his investigation.

---

[2] Unless otherwise noted, all references to "Tr. at __" refers to the transcript of the Motion to Suppress, Doc. No. 52.

Subsequently, Detective Morgan applied for his own Ex-Parte Order to Comcast to obtain the subscriber information for date, time and the IP address from the creation of Harry.Styles888. Tr. at 15. Comcast cable responded that the subscriber IP address was issued at that time to John Eastman, 157 Congress Avenue, 3rd floor, Waterbury, Connecticut.

A few days after Detective Morgan received the information from Vermont Trooper Jollymore, he was scheduled to work and did work a short-holiday weekend with Waterbury Detective Terni. "…I made a point that I would be stopping up to that address to further investigate the information that I had received from Trooper Jollymore." Tr. at 16. Detective Morgan and Terni went to the Eastman apartment on November 10th, 2012. Tr. at 16. Somewhere between 6 and 6:15 p.m. that evening Tr. at 17. At the time that Detectives Morgan and Terni went to the third-floor apartment at 157 Congress Avenue to question John Eastman, they had not obtained a search warrant. Tr. at 17. When asked why they had not obtained a search warrant, Detective Morgan testified as follows:

> The information that I had obtained from Trooper Jollymore was light with probable cause, and I felt that a Judge would question not doing my own investigative research prior to obtaining a search warrant. Plus, all of the information said John Eastman, it doesn't necessarily mean that a John Eastman was living in that residence at the time. Could have been multiple people living in the residence at that time. Could have been an open wireless network and with someone else was using their account. Could have been somebody visiting that they have provided the password to use that account.

5

And, quite frankly, I found in my years of doing these investigations that just showing up with a search warrant and going in and taking things doesn't yield as much cooperation as just going and talking to people and having an honest and direct conversation about the investigation and I feel that that garners much more cooperation with people. Tr. at 17-18.

When the Detectives went to the apartment, neither Detective was in a Police uniform, but dressed in jeans and sweat shirts. Detective Morgan had his badge clipped on his belt. Tr. at 20. And he thought that Detective Terni carried his on a chain around his neck. Tr. at 20.

It is not disputed that the Detectives did little or no significant investigation of John Eastman, other than obtaining an Ex-Parte Order on November 1st, 2012 to obtain the subscriber information (IP address, date/time of creation) for the "Harry.Styles888" user account. Tr. at 15:2-6;58:15-20. The State Court granted the Ex-Parte Order. Tr. at 58:21-22. Comcast responded to the Court Order on November 6th, 2012. The Comcast response received by Detective Morgan also stated that the subscriber account was assigned as of July 27th, 2012 to John Eastman at 157 Congress Avenue, 3rd Floor, Waterbury, Connecticut, 06708. Tr. at 15:18-11;59:3-10. That response also noted that the subscriber account was active, that the "method of payment" on the account was by statements sent to the "above address" (The "above address" being John Eastman, 157 Congress Avenue, Fl. 3, Waterbury, Connecticut 06708); the active nature of the account, in

combination with the current IP history, suggests the account was up to date

and that payment was being made by statement sent to John Eastman at 157

Congress Avenue. (See Doc. No. 54, Gov't Ex. 17 at 2-3).

Upon receiving the information from Comcast, Detective Morgan did

not believe that time was of the essence. Tr. at 59:15-16. However,

Detective Morgan failed to take even the most basic elementary

investigative steps and failed to perform the following due diligence:

1. Detective Morgan did not determine John Eastman's date of birth. Tr. at 64:16-18.
2. Detective Morgan did not run John Eastman's rap sheet. Tr. at 59:17-19.
3. Detective Morgan did not determine that John Eastman was a former registered sex offender and had a variety of prior convictions relevant to the investigation. Tr. at 60:8-25, 61:1-3.
4. Detective Morgan did not check the property records for 157 Congress Avenue. Tr. at 62:4-6.
5. Detective Morgan did not determine who was the lease holder for the property at 157 Congress Avenue. Tr. at 62:7-9.
6. Detective Morgan did not attempt to call the telephone number listed on the Comcast response to determine if there was a John Eastman at that number. See Gov't Ex. 17.
7. Detective Morgan did not attempt to email the email address listed on the Comcast response to determine if those accounts were active. See Gov't Ex. 17.
8. Detective Morgan did not request the billing records for the Comcast account that Comcast had indicted was "Active". See Gov't Ex. 17.

Had Detective Morgan performed such a preliminary, basic investigation

he would have known that Eastman was forty-five (45) years old. (Doc. No.

53, Ex. 4); that he had a lengthy criminal history with a rap sheet of thirty-

seven (37) pages. Tr. at 60:4-7.; (Doc. No. 53, Ex. 40); that in 1998, Mr.

Eastman was convicted of sexual assault in the fourth degree and risk of

injury to a minor; in 1999 he was convicted of harassment in the first degree;

and in 2008 he was convicted of risk of injury to a minor (Doc. No. 53, Ex. 1

at 7). In 1999, Mr. Eastman was placed on the Connecticut Sex Offender

Registry for ten (10) years. (Doc. No. 53, Ex. 40). He also had multiple

convictions for public indecency. (Doc. No. 53, Ex. 45); Tr. at 115-116.

In addition to the sex related convictions, Eastman was charged, in

2013, with assault on a public safety personnel in violation of C.G.S.§53a-

167c. He ultimately pled guilty to assault in the third degree. (Doc. No. 53,

Ex. 40). He has been convicted of interfering and resisting arrest. *Id*. He has

been convicted of numerous counts of disorderly conduct and or breach of

peace. *Id.* He has been convicted of at least three violations of probation.

(Doc. No. 53, Ex 1 at 7, 40) unverified information also revealed potentially

more than three violations of probation. Mr. Eastman, at the time that

Detective Morgan commenced this investigation, had an extensive criminal

record, multiple interactions with police and law enforcement, some of those

interactions resulted in him being charged and eventually pleading to

assaults, and was very savvy in his interaction with law enforcement.

Despite failing to undertake even a cursory investigation, Detective Morgan claimed that he needed more information to determine whether Eastman was living in the residence at that time. Tr. at 17: 23-24. However, had he done even a cursory investigation, combined with the information he received from Comcast on November 8th, 2012, he would have had virtual confirmation that John Eastman resided at 157 Congress Avenue, Waterbury, Connecticut, was the subscriber to the Comcast Account, and was the person making payment on the account.

It is not disputed that Detective Morgan chose not to apply for a search warrant Tr. at 61:17. Although he knew or should have known that. By November 8th, 2012, Detective Morgan had or could have had sufficient information to seek and obtain a search warrant. Detective Morgan claims that he did not try to apply for a search warrant, because "he felt he needed more information" is not credible. Tr. at 62:17-19.  His contention on direct examination that he "felt that a Judge may question not doing my own investigative research prior to obtaining a search warrant". Tr. at 17:20-21. Is belied by the fact that he never less did <u>not</u> do any investigative research at all.

During the course of the testimony on the motion to suppress, Morgan's testimony regarding why he did not at least try to obtain a warrant

is not credible. Morgan stated he "did not feel that at the time that there was a definite crime" because Eastman could have been thirteen years old, and therefore his chats with eleven (11) and twelve (12) year old girls would have been "age appropriate" talk. Tr. at 64:1-15. However, Morgan did not perform the exceedingly simple step of determining Mr. Eastman's age. Tr. at 64: 16-18. More importantly, even without taking any additional action, he already had information in his possession to suggest that John Eastman was an adult, not a minor, and therefore the chats were not "age appropriate". The letter that Detective Morgan received from Comcast dated November 6th, 2012, (see Doc. No. 54, Ex. 17), stated that John Eastman was the responsible party for payment of bills. A minor would never be listed as the obligor on a utility bill. Detective Morgan did not run John Eastman's rap sheet between November 8th, and November 10th, 2012 because he "didn't have a suspect at that time". Tr. at 59:17-22. That testimony was contradicted by Detective Terni, who testified that at the time "…[h]e became involved (November 10th,2012 at the Waterbury Police Department prior to going to the Eastman home), he considered Mr. Eastman already a suspect". Tr. at 161:3-5. It also defies credulity to believe that a police officer, including one with the experience of Detective Morgan, would have gone into the home of a suspect without at least trying to run a

rap sheet, particularly not knowing whether that individual was a fire arm owner. Tr. at 168:11. In spite of the lack of investigation and Morgan's claim that "he had no suspect". Tr. at 59:17-22. He nevertheless decided to go to the Eastman home, without any warrant, to attempt to get the same information to which he would have had access if he had obtained a warrant. Tr. at 66:13-25;67:1-8. It is also interesting that Detective Morgan requested that Detective Terni accompany him to the Eastman home "for officer's safety". Tr. at 72:4. No preliminary investigation or attempt to gather information regarding the individual at 157 Congress Street was performed by Detective Morgan, other than receiving information from Comcast, but he felt that he could be in jeopardy and needed back up for officer's safety. That contradicts his failure to do any of the previously noted simple and basic investigative tasks. In addition, although Detective Morgan testified that he did not have a suspect at that time. Tr. at 59:17-22. His partner, Detective Terni felt from the moment he became involved in the case, he and Detective Morgan considered Eastman to be a suspect. Tr. at161:3-5.

When Detectives Terni and Morgan arrived at the Eastman home at 157 Congress Avenue, 3rd Floor, Waterbury, Connecticut, on November 10th, 2012, they had not applied for a search warrant and had not received a search warrant. Tr. at 17:15-18:9;61:13-24. Yet without a search warrant,

they went to the Eastman home sometime after 6 p.m. Tr. at 71:12-13. Both

officers were armed with handguns. Tr. at 73:11-12. The firearms were

visible; Tr.73:13-14; the officers were visibly wearing their badges; Tr. at

17:1-2; and that they were carrying handcuffs. Tr. at 161:25-162:1-4.

After the Detectives arrived at the Eastman home, they knocked on

the door, and when the defendant opened the door, they identified

themselves as police officers. Tr. at 74:23-25. And it is also not disputed that

Mr. Eastman did not provide written consent for the Detectives to enter his

home. Tr. at 106:11. Mr. Eastman also did not provide oral consent for

Detectives Morgan and Terni to enter his home. The Detectives did not ask

for permission to enter the home, nor did Mr. Eastman invite them in. (See

Doc. No. 53) (Eastman Affidavit at Paragraph 4). They stepped inside and

Eastman backed away. He did not physically oppose them. *Id*. Detective

Terni does not recall the words exchanged between Detective Morgan and

Eastman. Tr. at 164:3-12. Terni's failure to recollect on the initial encounter

is just one of many items that Terni did not recall. Terni's entire

involvement in this matter began and ended on November 10th, 2012 Tr. at

158:20-23; Terni did not take notes of what occurred on November 10th,

2012. Tr. at 157:1. Terni never read Detectives Morgan's police report and

could not even recall whether or not he searched Eastman prior to putting him in a police vehicle. Tr. at 156:18-24.

Detective Terni testified that he reviewed "paperwork" about what had transpired on November 10th, 2012. Tr. at 157:4. The "paperwork" was limited to the voluntary statement form, the rights card, and a consent form. Tr. at 157:11-25. The "paperwork" did not include notes or the police report, and both Detective Terni and Detective Morgan testified there was no verbatim record taken of what was actually said or done at the Eastman home. Tr. at 165:5; Tr. at 91:16. Morgan did testify, and it is undisputed, that neither Detective nor Mr. Eastman ever uttered the word "consent". Tr. at75:19-21.

Neither Detective kept any notes during the Eastman investigation. Tr. at 91:23. Captain William Fox testified at the hearing that field notes play an important role in criminal investigations and that "most officers take field notes". Tr. at 200:10-14. Captain Fox is a training officer, supervisor, shift commander, graduate of the FBI Academy, and recipient for numerous accommodations for his work. Tr. at 199:1-23. Detective Terni testified that in an investigation lasting six (6) months "of course" an officer should take field notes, so as to remember important details about the investigation. Tr. 170:13-23. Detective Morgan agreed that the decision not to keep notes was

not necessarily in keeping with best police practices, but rather was in keeping with **his own police practices** [emphasis added] Tr. at 92:4-10. In addition to having no written notes or reports, there are no contemporaneous documents or recordings memorializing what occurred in the Eastman home. Tr. at 92:18; 91:14-16. That Detective Morgan's police report is dated May 7th, 2013, six months after the November 10th, 2012 entry to the Eastman home. Tr. at 90:17-25. Even though Detective Morgan knew the issue of whether Mr. Eastman consented to the Detectives entering the home was critical, the police report does not quote the words used by Detective Morgan or Mr. Eastman. The whole description of the issue of consent is vague. (See Doc. No. 53, Ex. 1)

Detectives Morgan and Terni admit that they did not seek or have in their possession a search warrant for 157 Congress Avenue, nor a search warrant to seize Eastman's computer. The fact that they relied on oral consent (rather than written consent) is a significant fact which undercuts their testimony. In fact, Captain Fox testified that Waterbury Police Department Officers are taught to use the standard written consent form whenever possible. Tr. at 202:2-4. He further testified that the purpose of using the standard written consent form is to protect everybody, including the officer's and the suspect. Tr. at 202:5-8. He further testified that written

consent is better than oral consent. Tr. at 202:9-12. Detective Morgan had no

rational or logical reason for not having a consent form with him when he

and Terni effectuated the search and seizure at Eastman's home. It is also

important to know that the Waterbury written consent form advises a suspect

that they have the right to refuse consent. Tr. at 175:14-16. Also, that

Detective Morgan did not advise Mr. Eastman that he had the right to refuse

consent. Tr. at 103:11.

Eventually, a written consent form was signed by John Eastman. It

was signed at 7:40 p.m. at the Waterbury Police Department. By the time the

consent was signed, Detectives Morgan and Terni had already entered the

Eastman apartment, confronted and questioned Eastman, and seized his

computer. Tr. at 101.

Once inside Eastman's home, the Detectives confronted him with the

allegation of the sex chats from Vermont and questioned him about those

communications. Tr. at 77:20-21. At that point, even Detective Morgan

agreed that Mr. Eastman was considered a suspect, and in fact was the only

suspect. Tr. at 161:5. At no time did the Waterbury Police Officers provide

Mr. Eastman with his Miranda Warnings while at the apartment. Tr. at

104:2. In fact, the Waterbury Detectives did not even have an advice of

rights card with them at the time. Tr. at 104:14. Nor did either Detective tell Eastman that he had a right to leave. Tr. at 104.

Again, once the Detectives were inside Eastman's apartment, they claimed not to have conducted a protective sweep of the home or looked in any room. Given that Morgan brought Terni with him because "officer safety is paramount". Tr. at 78:21, and that Detective Morgan did not ask whether anybody else was in the home at the time he entered, Tr. at 75:14, it is not credible to believe that he would <u>not</u> have conducted a protective sweep. However, in fact he did perform a protective sweep. According to Eastman's mother, Linda Eastman, she observed Detective Morgan checking her bedroom and conducting a protective sweep of other areas of the home. Tr. at 213. She further testified that Detective Morgan entered her bedroom and opened and examined drawers of a bureau in her room. Tr. at 214. Neither officer asked Linda Eastman for permission to search the apartment. Tr. at 215. Nor did she give consent to Detectives to search her home. Tr. at 79: 25. Finally, she was asked if either officer asked for her permission to take the computer that was located in the apartment and she testified that the detectives never asked for her permission, that they just took it. Tr. at 215. She testified that she would not have allowed the police to enter the home

without a warrant and would not allow them to take the computer without a warrant. Tr. at 217.

Subsequently, the officers informed Eastman of the information that had been received from Vermont and that the incident had occurred on the Skype Program and that the user had been using the name Harry.Styles888. That though the investigation the information led them to Eastman's address as being where the account was created, and asked if he had any information about that anything he wanted to say. Tr. at 22-23. During this time, Eastman was seated on the couch and Detective Morgan was standing in front of him and Detective Terni was off to Morgan's side and slightly behind him. Tr. at 22. Clearly, they had contained and controlled Mr. Eastman, and talking to him in what could only be viewed as an intimidating manor. Subsequently, they asked him if he would accompany them to the Waterbury Police Department where he subsequently gave an incriminating statement.

## ARGUMENT: STANDARD OF REVIEW

"On an Appeal from a challenged suppression order, will review a district courts finding of facts for clear error, and its resolution of questions of law and mixed questions of law and fact de novo. See *United States v. Hack, 884 F.3d 400, 408 (2d Cir. 2018); United States v. Delva, 858 F. 3d 135 (2d Cir. 2017); United*

*States. v. Bershychansky, 778 F.3d 102, 108 (2d Cir. 2015).* On Appeal from a district court's ruling on a motion to suppress evidence, "we review legal conclusions de novo and findings of facts for clear error." *United States. v. Freeman, 735 F.3d 92, 95 (2d Cir. 2013).* We also reviewed "…de novo mixed questions of law and fact. *Id. (Citing United States v. Lucky, 569 F.3d 101, 105-06 (2d Cir. 2009))* We "pay special deference to the district court's factual determinations going to witness credibility." *United States v. Jiau, 734 F.3d 147, 151 (2d Cir.2013); United States v. Lucky, 596 F.3d at 106. "The credibility* assessments by the Judge who presided over the trial are entitled to considerable deference… *"United States v. Delva, 858 F.3d at 160 (citations omitted);* and that [w]here there are two permissible views of the evidence, the factfinders choice between them cannot be clearly erroneous.*" Id.*

## THE DISTRICT COURT ERRED IN ITS DECISION DENYING THE DEFENDANT'S MOTION TO SPPRESS

The Court erred in the decision denying the defendant's motion to suppress. The Government bears the burden of proof in a warrantless search such as occurred here.

> On a motion to suppress, the defendant bears the initial burden of establishing that a Government official acted without a warrant subjecting him to a search or seizure…once the defendant has met this burden, the burden then shifts to the Government to demonstrate by preponderance of the evidence…that the search or seizure did not violate the fourth

amendment." *United States v. Herron, 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014) (Citations omitted)*.

There is no dispute that the police seized the computer from Mr. Eastman's home and subjected it to a search. Nor is there any dispute that no warrant was issued for the seizure or the search. The Government therefore had the burden of proving that it's actions were legal. *United States v. Vasquez, 638 F. 2d. 507,524 (2d Cir. 1980) (Omitting Citations)*.

The entry into Eastman's home, and the seizure of his computer, was unreasonable. "[I]t is a cardinal principle that searches conducted outside the judicial process, without prior approval by a Judge or Magistrate, are per se unreasonable…subject only to a few specifically established and well-delineated exceptions." *Mincy v. Arizona, 437 U.S. 385, 390 (1978)* (internal citations and quotation marks omitted); See also, *Coolidge v. New Hampshire, 403 U.S. 443, 474 (1971)* ("A search or seizure carried out on a suspect's premises without a warrant is per se unreasonable, unless the police can show it falls within one of a carefully defined set of exceptions"). As a basic principle, under the Fourth Amendment, entry into a home without a warrant or a search and seizure inside a home without a warrant are presumptively unreasonable. *See Kentucky v. King, 563 U.S. 452, 459, 131 S. Ct. 1849, 179 L. Ed. 2d 865 (2011)*. However, the court… "ha[s] also recognized that the presumption may be overcome in some circumstances because 'the ultimate touch tone of the Fourth Amendment is'

19

reasonableness.'" "The Government has the burden of proving, by preponderance of the evidence, that a consent to search was voluntary." *United States v. Isiofia, 370 F.3d 226, 230 (2d Cir. 2004).* In seeking to admit evidence obtained during a warrantless search on the basis of consent, the Government must demonstrate by preponderance of the evidence that such consent was (1) provided (2) voluntary (3) by someone with actual or apparent authority over the premises. The Government must further demonstrate (4) that the consent remain effective (ie. was not retracted) at the time the evidence was seized, and (5) was not countermanded by a co inhabitance express refusal to consent. In holding the Government to its burden, it should be remembered that the right to be free from warrantless searches is "fundamental" and "cannot be eroded simply because the Government seeks to take the path of least resistance by obtaining consent from an individual whose interest in the premises search is obviously vague and intenerated." *United States v. Gonzalez Athehorta, 729 F. Supp. 248, 258 (E.D.N.Y. 1990).* Absent valid, voluntary consent, the moment the Waterbury Detectives entered the Eastman home, they were conducting a search. See, E.g., *Miller v. United States, 357 U.S. 301 (1958); Johnson v. United States, 333 U.S. 10 (1948)*. Since the search commenced immediately upon the Detectives entering the apartment, everything that followed, including the seizure of the computer and any proffered statements, must be suppressed as fruit of the poisonous tree. "[The] exclusionary sanction

applies to any 'fruits' of a constitutional violation- whether such evidence is

tangible, physical material actually seize in an illegal search, items observed or

words overheard in the course of the unlawful activity, or confessions to statements

of the accused obtained during an illegal arrest and detention." *United States v.*

*Crews, 445 U.S. 463, 470 (1980)*. The Government has not proven that Ms.

Eastman consented to the search of her home (and by extension that she did not

negate any alleged consent given by Mr. Eastman). Even if Mr. Eastman consented

to the Detectives entering the home, that consent was negated by Ms. Eastman's

retracting of that purported consent when she questioned the Detectives presence in

her home. An individual who possess actual or apparent authority may withdraw

his or her consent at any time prior to or during the search. See, *Walter v. United*

*States, 447 U.S. 649, 656 (1980); United States v. Moran Vargas, 376 F.3d 112,*

*116 (2d Cir. 2004); See Georgia v. Randolph, 547 U.S. 103, 120 (2006).*

The Detectives were well aware that they needed a warrant to enter in and to

search Eastman's apartment. They neglected to do so. Detective Morgan testified it

was better to surprise an individual and gain entrance to the apartment without a

search warrant, knowing that absent consent he could not enter the apartment.

Detectives Morgan and Terni did not conduct any investigation whatsoever

concerning John Eastman, the apartment, the lease holder of the apartment, a

criminal record check, or any other simple investigative task prior to suddenly

appearing at the Eastman apartment. Their actions, their demeanor, the fact that they had weapons and badges of authority were displayed to intimidate Mr. Eastman and to get inside the apartment, knowing full and well of the Fourth Amendment requirements. Their actions were completely unreasonable and designed specifically to thwart the protections of the Fourth Amendment. Their actions were unreasonable and should not be sanctioned by this court.

**CONSENT**

Mr. Eastman did not consent to Detectives entering the home, and therefore the Detectives seizure and search of the computer was fruit of the poisonous tree. The Detectives illegal entry into the Eastman home did not dissipate enough to avoid tainting the resulting seizure of the computer and supposed statements of Mr. Eastman. In *United States v. Snype*, the Second Circuit stated:

> When a consent to search follows an illegal entry, this circuit requires that the Government to show more than the voluntariness of the consent; it must also demonstrate that, "the taint of the initial entry has been dissipated" in order to admit evidence seized following the illegal entry. *U.S. v. Oguns', 921 F.2d 442, 447 (2nd Cir. 1990)* (internal quotation marks omitted) Oguns' identification of taint and voluntariness has distinct inquires in evaluating the validity of certain consents to rise from two Supreme Court decisions: *Wong Sun v. United States*, which held the evidence seized after an illegal search must be suppressed unless the Government shows that it, in fact, resulted from "an intervening independent act of free will", sufficient "to purge the primary taint of the unlawful invasion," *371 U.S. 471, 486, 83 S.Ct. 407, 9 L. Ed. 2d 441 (1963); and Brown v. Illinois*, which held that, where an inculpatory statement follows unlawful arrest, a finding of voluntariness under the Fifth Amendment (based on Miranda Warnings) does not obviate the need to make a separate Fourth Amendment determination as to whether the statements are "sufficiently an act of free

22

will to purge a primary taint.'" *422 U.S. 590, 602, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975) (quoting Wong Sun, Id.)*
*441 F.3d 119, 132 (2nd Cir. 2006).*

The Supreme Court has prescribed three factors for determining whether the taint from a fourth amendment violation had dissipated: (1) the time between the Fourth Amendment violation and the acquisition of the evidence, (2) the presence of intervening circumstances, and (3) the flagrancy of official misconduct. *Brown v. Illinois, 422 U.S. 590, 603-04 (1975).* Here, all three factors point to the need to apply the Exclusionary Rule. The time between the illegal entry into the home and the seizure of the computer was quite brief (less than half an hour according to the Detectives own timeline). There were essentially no intervening circumstances, no change of venue, no substantive conversations between police and Mr. Eastman, and no opportunity for Mr. Eastman to speak to counsel or communicate with anyone outside the apartment.

To trigger the Exclusionary Rule, police conduct must be sufficiently deliberate that an exclusion can meaningfully deter it, and sufficiently culpable that such a turn is worth a price paid by the justice system. *Herring v. United States, 555 U.S. 135, 140 (2009)*; *United States v. Jacobson, 4 F. Supp. 3d 515, 522 (E.D.N.Y. 2014).* There is a distinction between inadvertent mistakes and willful conduct. The officers conduct, including their preference for not obtaining warrants, for approaching individuals in a show of force, in an attempt to obtain

consent and cooperation, and the seizure of evidence, in situations where consent forms are not even with the officers conducting activity, is willful, deliberate misconduct that violates the Fourth Amendment. As Detective Morgan testified, he did not feel there was "a need" to apply for a search warrant. Tr. at 65. and then answered in the affirmative when he was asked if "the better course of action was to go to the home anyway without a warrant. Tr. at 67.

Finally, the absence of any notes or reports by the officers is most troubling. In his testimony, Morgan was asked:

 Q "… and your testimony is that not keeping notes is in keeping with the best police practices?" His answer is truly illuminating.

A "in keeping with my police practices". Tr. at 92.

The failure to keep any note, report, recording certainly calls into question his creditability when called to testify about those events approximately 5 years later.

Voluntary consent is an excepted exception to the warrant requirement if the Waterbury Detectives had obtained it. They did not do so in this case. There was no written consent by either Mr. Eastman. Detectives failed to prove that Mr. Eastman provided a voluntary consent. "The Government has a burden of proving, by a preponderance of the evidence, that a consent to search was voluntary." *United States v. Isiofia, 376 F. 3d at 230.* In holding the Government to its burden,

24

it is fundamental that Detectives Morgan and Terni took the path of "least resistance", the easier path, and the path that completely ignored Mr. Eastman's Fourth Amendment rights by claiming that he "consented" to a search of his apartment. With no recording, contemporariness notes, a properly signed consent to search form, or any other indicia of Eastman's consent, calls into question the Detectives motives and what truly happened when they entered Eastman's apartment. Absent a valid and voluntary consent, once Moraghan and Terni entered the Eastman apartment, they were conducting a search. It was a search without any legitimate legal basis, without a search warrant, without proof of Eastman's consent, and a product of an intentional abuse of authority by the Waterbury Police Detectives.

**CONCLUSION**

For the foregoing reasons, Mr. Eastman respectively asks this court to vacate the ruling on the motion to suppress and remand the matter to the District Court for a new preceding.

Respectfully Submitted,

**/s/ David A. Moraghan, Esq.**
David A. Moraghan, Esq.
Smith, Keefe, Moraghan & Waterfall, LLC.
257 Main Street
Torrington, CT 06790
Telephone: (860) 482-7651
Juris No.: 102959
Federal Bar No.: ct00054
E-mail: dam@skmwlaw.com

## CERTIFICATE OF COMPLIANCE

1.  This Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).  The Brief contains 6,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2.  This Brief complies with the typeface requirements by Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 and Times New Roman 14 point font.

Respectfully Submitted,

**/s/ David A. Moraghan, Esq.**
David A. Moraghan, Esq.
Smith, Keefe, Moraghan & Waterfall, LLC.
257 Main Street
Torrington, CT 06790
Telephone:  (860) 482-7651
Juris No.:  102959
Federal Bar No.:  ct00054
E-mail:  dam@skmwlaw.com

Dated:  July 23, 2018

# SPECIAL APPENDIX

**i**

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

Page

Judgment, dated November 28, 2017, Appealed
 From...................................................................... SPA-1

**SPA-1**

UNITED STATES DISTRICT COURT
District of Connecticut

UNITED STATES OF AMERICA ~~FILED~~    JUDGMENT IN A CRIMINAL CASE

vs.    2017 NOV 30  A 10: 19   CASE NO.  3:16CR6 (MPS)
USM NO:   22818-014

JOHN EASTMAN    'S DISTRICT COURT
'' RTFORD CT   *NEERAJ PATEL*
Assistant United States Attorney

*WILLIAM M. BLOSS*
Defendant's Attorney

THE DEFENDANT:   plead guilty to count **1** of the Indictment.

Accordingly the defendant is adjudicated guilty of the following offense:

| Title & Section | Nature of Offense | Offense Concluded | Count |
|---|---|---|---|
| 18 U.S.C. § 2422(b) | Use of an Interstate Facility to Persuade a Minor to Engage in Unlawful Sexual Activity | May 2013 | 1 |

The sentence reflects the need to protect the public and deter the defendant, in light of the defendant's long criminal record and previous sentences, including for conduct against minors; serious uncharged criminal conduct; criminal conduct while on probation under strict conditions; and previous refusals to comply with the rules of sex offender treatment.   The sentence also was based on the need to reflect the seriousness of the offense, which involved deception and creating a visual depiction of a minor involved in sexual conduct. The sentence also included a downward variance to take account of the fact that the Guidelines range was greater than necessary to serve the purposes of sentencing and to provide some extra credit for the defendant's lengthy pre-trial incarceration in an austere holding facility with no programming.   The court also imposed a lifetime term of supervised release with strict conditions, including computer monitoring, to protect the public, which the Court found to be warranted by the defendant's history and characteristics.

**IMPRISONMENT**
The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total of **204** months, with credit for time served.

**SUPERVISED RELEASE**
Upon release from imprisonment, the defendant shall be on supervised release for a total term of **Life**. The Mandatory and Standard Conditions of Supervised Release as attached, are imposed. In addition, the following Special Conditions are imposed:

1. **You must not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the nature of your background and current offense and who has been approved by the Probation Office.**

2. **You must not loiter around playgrounds schools, youth-oriented organizations/clubs or any other place where children under the age of 18 are known to congregate.   You must not associate with or have contact with convicted sex offenders or those considered inappropriate by the Probation Office because of a connection to sexual abuse of minors or sexually explicit materials involving minors, unless as part of an approved counseling program.**

1

SPA-2

3. You must submit to periodic polygraph testing at the discretion of the Probation Office as a means to ensure that you are in compliance with the requirements of your supervision following the completion of a sex offender treatment program. You must pay all or a portion of the costs associated with testing based upon your ability to pay as determined by the Probation Office and approved by the Court.

4. You must not possess any materials including pictures, photographs, books, drawings, videos, or video games depicting child pornography, as defined in 18 U.S.C. § 2256.

5. You must submit your person, residence, office or vehicle to a search, conducted by a U. S. Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; you must inform any other residents that the premises may be subject to searches pursuant to this condition.

6. You must submit all photographic equipment, personal computers or other Internet-capable devices and related equipment, owned, controlled or used by you to a review conducted by the U. S. Probation Office or its designee at a reasonable time and in a reasonable manner without prior notice or search warrant. You must also permit the Probation Office to install and use monitoring programs on all such equipment. You must bear the costs of said monitoring programs, depending on your ability to do so. Refusal to submit to such search will be a violation of conditions of supervision. This condition may be modified on motion by the parties or at the recommendation of the Probation Office, communicated to the parties, based on changes in technology.

7. You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. 16901, et seq.) as directed by the Probation Office, the Bureau of Prisons, or any state sex offender registration agency, in which you reside, work, are a student, or were convicted of a qualifying offense.

8. You must not be employed in any position or participate as a volunteer in any activity that involves contact with children under the age of 18, except as approved by the Probation Officer.

9. You must participate in mental health treatment, with an emphasis on sexual offender treatment, as recommended by the U. S. Probation Office and approved by the Court, and must abide by the policies and procedures of the program, which may include polygraph testing. You must pay all or a portion of the costs associated with treatment based upon your ability to pay as determined by the Probation Office and approved by the Court.

10. You must participate in substance abuse evaluation and treatment in a program recommended by the Probation Office and approved by the Court. You must comply with the rules of the program.

11. You must provide the Probation Office with access to any requested financial records, including but not limited to, telephone/cellular phone bills and credit card statements. The purpose of this condition is to ensure that you do not purchase child pornography or blocking software and that you do not engage in harassing or illegal communications.

2

SPA-3

**CRIMINAL MONETARY PENALTIES**
The defendant must pay the total criminal monetary penalties under the schedule of payments as follows:

Special Assessment:      $100.00

It is further ordered that the defendant will notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until all costs and special assessments imposed by this judgment, are paid.

The defendant is remanded to the custody of the United States Marshal.

Count **2** is dismissed on the oral motion of the Government.

**JUDICIAL RECOMMENDATION TO THE BUREAU OF PRISONS**
That the defendant serve his term of incarceration at FMC Devens.

November 28, 2017
Date of Imposition of Sentence

**/s/ MICHAEL P. SHEA**
Michael P. Shea
United States District Judge
Date: November 30, 2017

3

**SPA-4**

## CONDITIONS OF SUPERVISED RELEASE

In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:

### MANDATORY CONDITIONS

(1)  You must not commit another federal, state or local crime.

(2)  You must not unlawfully possess a controlled substance.

(3)  You must refrain from any unlawful use of a controlled substance.   You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐  The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

(4)  ■ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

(5)  ■ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

(6)  ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

(7)  ■ You must make restitution in accordance with 18 U.S.C.§§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

### STANDARD CONDITIONS

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

(1)  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

(2)  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

(3)  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

(4)  You must answer truthfully the questions asked by your probation officer.

(5)  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

(6)  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

(7)  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so.  If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

(8)  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

(9)  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

(10)  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

(11)  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

(12)  You must follow the instructions of the probation officer related to the conditions of supervision.

4

SPA-5

Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision <u>and impose a term of imprisonment</u>, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)  _____        _____
          Defendant                                 Date

          _____        _____
          U.S. Probation Officer/Designated Witness  Date

**CERTIFIED AS A TRUE COPY ON THIS DATE:** _____

By: _____
    Deputy Clerk

**RETURN**

I have executed this judgment as follows:

Defendant delivered on _____ to _____ a _____, with a certified copy of this judgment.

                                              _____
                                                     Brian Taylor
                                              Acting United States Marshal

                                    By  _____
                                                   Deputy Marshal

5